COLUMBUS BAR ASSOCIATION *v.* RAMEY.

[Cite as Columbus Bar Assn. v. Ramey (1972),
32 Ohio St. 2d 91.]

(D. D. No. 72-2—Decided December 6, 1972.)

94

96

*Mr. William L. Clark, Mr. Lee C. Mittman* and *Mr. Richard V. Patchen,* for relator.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. John C. Elam* and *Mr. Michael G. Long,* for respondent.

*Per Curiam.* In view of the conflicting testimony and the circumstances surrounding this disciplinary proceeding, we find it necessary to examine the entire record of this case. Having done so, we approve the findings and recommendations of the board both as to Count I and Count II.

Addressing ourselves first to Count II, we agree with the board's findings that respondent's conduct constituted substantial compliance with his duties as trustee. Although the record evidences a possible lack of interest by respondent in inquiring as to the well-being of Miss Sheppard,[e] such conduct, by itself, does not violate the terms of the trust agreement nor the Code of Professional Responsibility.

Respondent was never formally notified that Attorney Dawson was representing Miss Sheppard, and he had no

[e]Although a trustee does not have the duty to constantly inquire into the living conditions of his charge, he should initiate independent affirmative action under circumstances such as existed herein. Respondent was aware of Miss Sheppard's mental state, as evidenced by her many expressed fears. He had accepted the responsibility of controlling her funds, at his sole discretion, yet he failed to contact her to inquire as to her well-being even after being notified by Attorney Dawson that she was still living at the same place that she had previously expressed a desire to leave, and that she was living in a state of near-poverty.

authority to turn over any funds under the circumstances presented. A complete and accurate accounting was made, the trust and will were declared void, and there is no evidence that respondent misused the trust funds. Accordingly, Count II is dismissed.

Respondent's conduct in preparing a trust and will, through which he stood to inherit all of Miss Sheppard's estate, presents a different problem. Clearly, such conduct would be violative of Ohio's present Code of Professional Responsibility, EC 5-5 providing that "other than in exceptional circumstances, a lawyer should insist that an instrument in which his client desires to name him beneficially, be prepared by another lawyer selected by the client." The circumstances herein are antipode from those which would fall into the category of the exceptional circumstances provided for above.

Upon examination of the record, we find that respondent's conduct as to the trust agreement and will of July 21, 1969, did not comport with the more general but nevertheless high standards of conduct required by then existing Canons 6 and 11. By respondent's own testimony, Miss Sheppard is pictured as a distressed, confused woman, living in fear of being recommitted to a state institution and trusting few, if any, people. Her relationship with respondent arose from respondent's prior association with Poppleton, a man whom she had trusted explicitly and who had secured her release from a state institution. She had seen respondent on only one prior occasion, and had not established such a relationship with him as would cause one to expect her to designate him as remainderman of her entire estate. It should also be noted that respondent was paid for all his services, including those of June 20 and June 21; that the trust provided for reasonable compensation to the trustee; and that no additional uncompensated services were formally contemplated by the parties.

Although we are cognizant of the fact that the subject of a new will did not arise until late Friday, June 20, 1969, and that Miss Sheppard had expressed a desire to leave Columbus on Saturday afternoon, resulting in a hurried prep-

aration, we do not deem this to justify respondent's conduct. Reasonable prudence, under those circumstances, requires an attorney to exercise the utmost care in safeguarding his client's interest.

By the nature of the trust agreement and will, executed simultaneously, respondent placed himself in a position of conflicting interest. As trustee, he had sole discretion as to any depletions from the principal in the trust, and, as the beneficiary of the trust, any depletion of the trust principal would have reduced the sum which he stood to receive at her death.

We cannot condone respondent's conduct in categorically advising Miss Sheppard that the trust could be changed at her desire. Despite respondent's claim that he believed the trust to be revocable, and, without reaching a final conclusion as to the revocability of the trust agreement; it must be noted that the instrument itself contains terms of irrevocability; thus, at least inviting litigation as to the issue of revocability.

Although respondent properly advised Miss Sheppard that she could execute a new will at any time, the record is devoid of any explanation provided her as to whether a subsequent will would affect his status as the beneficiary of the trust *res*. Noting again that we do not make, and need not make, any specific finding as to the effect that execution of a subsequent will would have ultimately had on respondent's status under the trust, we cannot condone his conduct in failing to point out to his client the fact that the specific language of the trust designated him as the remainderman beneficiary (he being "the legatee named in the will executed simultaneously" with the trust) with the literal language of the trust instrument purporting to make such trust, including such designation as remainderman beneficiary, irrevocable.

Assuming, as contended by respondent, that the "law of trusts" provides for revocability by the unilateral act of the settlor in all cases where the settlor is also *the*[7] *bene-*

---

[7]Here the settlor was not *the* beneficiary in the sense of being the only beneficiary, but instead was *a* beneficiary.

*ficiary*, one could not reasonably expect that a lay person in the position of Miss Sheppard would so conclude where the instrument itself contains specific language to the contrary. If all parties intended and understood the trust to be revocable, the use of words of irrevocability therein, without specific discussion as to their presence with the client, necessarily creates the potentiality of conflicting interest.

That Miss Sheppard was not entirely satisfied with the instruments or with her knowledge thereof, is evidenced by the fact that she contacted two attorneys in Arkansas very shortly after executing the instruments in respondent's office. An analysis of the record indicates that Miss Sheppard's fears, including her fear of being recommitted, clouded her understanding of the effect of the instruments, both at the time of the execution and afterward, and that respondent was fully aware of such mental state.

The conduct evidenced by this record indicates the creation of a conflict of interest and a failure to fully disclose the potential legal significance of the instruments prepared, and thus constitutes conduct contrary to the standards of conduct prescribed by Canons 6 and 11 of the Canons of Professional Ethics.

The Board of Commissioners on Grievances and Discipline having recommended that respondent be given a public reprimand, and this court having found sufficient evidence in the record to support such recommendation, we hold that respondent should be, and hereby is, publicly reprimanded for such misconduct.

*Judgment accordingly.*

O'NEILL, C. J., SCHNEIDER, STERN and LEACH, JJ., concur.