640 F.2d 898
 In the Matter of Suspension to Practice Before the United
States District Court of the Southern District of
Iowa of John D. RANDALL.
Appeal of John D. RANDALL.
John D. RANDALL, Appellant,
v.
W. W. REYNOLDSON; Clay LeGrand; Warren J. Rees; Harvey
Uhlenhopp; David Harris; Mark McCormick; Robert G.
Allbee; Arthur A. McGiverin; Jerry L.
Larson, Appellees.
In the Matter of Suspension to Practice Before the United
States District Court for the Northern District of
Iowa of John D. RANDALL, Appellant.
In the Matter of John D. RANDALL, Sr., Petitioner.
 Nos. 80-1254, 80-1451, 80-1545 and 80-8117.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 12, 1980.
Decided Jan. 21, 1981.
 
 Oscar Fendler, Blytheville, Ark., John Lashly, St. Louis, Mo., for appellant.
 Mark E. Schantz, Sol. Gen., Lee H. Gaudineer, Des Moines, Iowa, for appellees.
 Before HEANEY and BRIGHT, Circuit Judges, and GIBSON, Senior Circuit Judge.
 GIBSON, Senior Circuit Judge.
 
 
 1
 This consolidated appeal concerns four separate proceedings involving the disbarment of John D. Randall, Sr., hereinafter referred to as Randall, from the practice of law. On November 14, 1979, the Supreme Court of Iowa disbarred Randall for drawing a will for a business partner, in which Randall named himself as sole beneficiary, and for engaging in a conflict of interest by representing a corporation, wholly owned on an equal basis by Randall and his business partner, in litigation with a former employee. Committee on Professional Ethics and Conduct of the Iowa State Bar Association v. Randall, 285 N.W.2d 161 (Iowa 1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).[1]
 
 
 2
 Randall's disbarment in Iowa resulted from his actions, found to be a conflict of interest, in connection with drawing a will for Lovell Myers and also from Randall's representation of Myers's corporate interest. The complete findings of the Supreme Court of Iowa with regard to these matters are reported in Randall, supra, 285 N.W.2d at 161-65. We present below only a short summary of these findings.
 
 
 3
 In the early 1940's, Randall met Myers and entered into a joint venture for the purpose of purchasing and farming farmland in Iowa. Myers managed the day-to-day farming activities, while Randall handled the financial affairs. In 1952, Myers and Randall incorporated the farming operation, under the corporate name of Myers Farms, Inc., each receiving fifty percent of the stock.
 
 
 4
 Myers was divorced from his wife in the early 1940's. Myers did have a child, now Mrs. Marie Jensen, by way of the marriage. In 1949, she married and has had two sons. Myers was relatively close to his daughter and grandsons prior to his death in 1976. Randall contended this was not so, but the Supreme Court of Iowa found to the contrary.
 
 
 5
 The farming venture prospered under the ownership of Myers and Randall. In 1973, however, the farm foreman, Gilbert Morningstar, accused Myers of forging a deed to an eighty-acre tract of land which Morningstar acquired by warranty deed in 1956 from Charlie Hess. This deed was recorded on February 29, 1956. In 1967, a deed, admittedly forged by Myers, was signed, conveying the eighty acres from the Morningstars to Myers Farms, Inc. This forged deed was notarized by an associate in Randall's office. Later the corporation executed a $90,000 mortgage on this eighty acres, which mortgage also included other land belonging to the corporation. At the time Morningstar confronted Myers and Randall with the forged deed, Randall, at Myers's urging, prepared and executed a quit-claim deed to the land from the corporation to the Morningstars. Myers assured Morningstar that the mortgage would be released from this eighty-acre property. When the release was not forthcoming after about a year, Morningstar resigned from his employment and sued the corporation, Myers, and Randall to remove the mortgage and for damages. Randall represented himself and the corporation in the action surrounding the title to the land. See Morningstar v. Myers, 255 N.W.2d 159 (Iowa 1977). In that action, which was dismissed on January 17, 1979, by the parties, Randall claimed title to the land under a copy of an unrecorded deed antedating by a day the original, recorded deed to Morningstar. This alleged deed from the Morningstars was never filed of record and has never been produced, although a copy of it was produced by Randall in defense of the Morningstar suit. We note, however, that the corporation did not claim title under the purported unrecorded deed when it obtained a mortgage on the land in 1967.
 
 
 6
 Approximately one month after Morningstar accused Myers, in February 1973, of forging the land deed, Myers executed a will. The will was drawn by Randall and named Randall sole executor and sole beneficiary of Myers's estate, valued at over two million dollars. Randall placed the will in his private desk drawer, did not keep a copy in the office file, and apparently did not give a copy to Myers.
 
 
 7
 In early 1976, Myers died. A few days later, Randall asked Mrs. Jensen whether she knew of any will made by Myers, her father. She replied in the negative and inquired of Randall whether he knew of any. He said he did not. Less than a week later, Randall filed Myers's will in the probate court. Randall explained his denying knowledge of a will to Mrs. Jensen as a lapse of memory.
 
 
 8
 Mrs. Jensen subsequently filed a suit contesting the will. Randall settled the suit for approximately one and one-half million dollars. Prior to settlement, Mrs. Jensen filed a complaint against Randall with the Iowa Bar, which ultimately resulted in Randall's disbarment by the Supreme Court of Iowa.
 
 
 9
 Following the state disbarment, on January 17 and May 20, 1980, respectively, the United States District Courts for the Southern and Northern Districts of Iowa disbarred Randall from practice in their courts on the basis of the Supreme Court of Iowa's action in the state disbarment proceedings. Randall appeals these decisions in Appeals No. 80-1254 and 80-1545 respectively. On July 10, 1980, this court entered an order for Randall to show cause why he should not be suspended or disbarred by the Eighth Circuit. This original proceeding is No. 80-8117, wherein Randall contends he should not be disbarred from this court.
 
 
 10
 We affirm the decisions of the District Courts in disbarring Randall and in dismissing his 1983 action against the justices of the Supreme Court of Iowa, and we disbar Randall from the practice of law in the United States Court of Appeals for the Eighth Circuit.
 
 I.
 
 11
 The licensing of attorneys is primarily a state function, usually under the aegis and direction of the various states' highest courts. The federal courts, except in limited circumstances, recognize and give effect to the findings of disciplinary proceedings in the state courts.
 
 
 12
 The Iowa Supreme Court in a unanimous decision, with one justice not participating, held Randall to be in violation of the Iowa Code of Professional Responsibility and revoked his license. The United States Courts of Appeals are without jurisdiction to review a state judgment of disbarment. Jones v. Hulse, 391 F.2d 198, 202 (8th Cir.), cert. denied, 393 U.S. 889, 89 S.Ct. 206, 21 L.Ed.2d 167 (1968); e. g., Sawyer v. Overton, 595 F.2d 252 (5th Cir. 1979); Rivera v. Monge, 587 F.2d 539 (1st Cir. 1978). The only appeal from the Iowa court is by way of certiorari to the United States Supreme Court. See Konigsberg v. California, 353 U.S. 252, 258, 77 S.Ct. 722, 725, 1 L.Ed.2d 810 (1957) (limited review of state admission proceeding by Supreme Court on review by writ of certiorari); In re Summers, 325 U.S. 561, 568-69, 65 S.Ct. 1307, 1311-12, 89 L.Ed. 1795 (1945) (same).
 
 
 13
 With regard to Randall's potential disbarment from this court, however, we have jurisdiction to review the findings of the Supreme Court of Iowa. Still, this court must give high respect to the judgment of the state court in its disbarment proceedings. "But it is not conclusively binding on the federal courts." Theard v. United States, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). See In Re Ruffalo, 390 U.S. 544, 547, 88 S.Ct. 1222, 1224, 20 L.Ed.2d 117 (1968); Jones v. Hulse, supra, 391 F.2d at 200-01. "(D)isbarment by federal courts does not automatically flow from disbarment by state courts." Theard, supra, 354 U.S. at 282, 77 S.Ct. at 1276. The extent of the responsibility of a federal court to make an independent, de novo review was outlined by the Supreme Court in Selling v. Radford, 243 U.S. 46, 50-51, 37 S.Ct. 377, 378-379, 61 L.Ed. 585 (1916), wherein the Court stated:
 
 
 14
 That is to say, we are of opinion that we should recognize the condition created by the judgment of the state court unless, from an intrinsic consideration of the state record, one or all of the following conditions should appear: 1. That the state procedure from want of notice or opportunity to be heard was wanting in due process; 2, that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not consistently with our duty accept as final the conclusion on that subject; or 3, that some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do.
 
 II.
 
 15
 Since the crux of these regrettable proceedings rests primarily on the disbarment judgment of the Supreme Court of Iowa, we first consider the collateral attack, by way of the section 1983 complaint, on that judgment. The section 1983 injunctive remedy action was filed against the justices, individually, of the Supreme Court of Iowa. In his complaint, Randall charged that the justices deprived him of equal protection and due process in violation of the fourteenth amendment. Randall alleged (1) that he was denied discovery; (2) that he was tried by a biased panel of the Grievance Commission; and (3) that generally there were insufficient facts in the record to support his disbarment. Randall also alleges certain improprieties by the chief counsel for the Ethics Committee, Gaudineer, and by the Grievance Commission.
 
 
 16
 Randall, by filing his section 1983 remedy action against the justices of the Supreme Court of Iowa, has attempted to obtain collateral review of the findings of that court. This court has taken the position that res judicata applies to issues previously litigated in the state disciplinary procedures. Goodrich v. Supreme Court of the State of South Dakota, 511 F.2d 316, 318 (8th Cir. 1975). We held in Goodrich, however, that only those issues which were actually litigated would be subject to res judicata, or more precisely, collateral estoppel. Id. We therefore will not review the factual basis of Randall's Iowa state disbarment, except to the extent that we find the acts alleged were of a nature as to form a proper predicate for disbarment procedures. See Allen v. McCurry, --- U.S. ----, ----, 101 S.Ct. 411, 419-420, 66 L.Ed.2d 308 (1980).
 
 
 17
 Randall's allegations regarding lack of due process in the disciplinary procedure were not ruled upon by the Supreme Court of Iowa. That court held that since Randall did not present the issue before the Grievance Commission or in his brief to the court he could not raise it for the first time at oral argument, and then concluded that the due process argument must be considered waived. Randall, supra, 285 N.W.2d at 164-65. This constitutional issue is properly before us for review. C.f. Allen v. McCurry, supra, --- U.S. at ---- n.5, 101 S.Ct. at 415 n.5 (reserving judgment).
 
 
 18
 Randall claims that the denial of his discovery against the justices of the Iowa Supreme Court, and earlier, against the Grievance Commission members, was a denial of due process. We have reviewed the record and find that the interrogatories presented to those individuals were an attempt to obtain the mental impressions of the Commission and of the court in the decisionmaking process. The Iowa disciplinary proceedings constituted an inquiry into Randall's professional conduct. Randall attempted to counter by trying the Commission and the Iowa Supreme Court. These tactics are impermissible, contrary to an orderly system of justice, and present no justiciable issue in limiting discovery into the internal operations of the Commission and the Supreme Court of Iowa. See Hickman v. Taylor, 329 U.S. 495, 510-11, 67 S.Ct. 385, 393-94, 91 L.Ed. 451 (1947); c.f. Dennis v. Sparks, --- U.S. ----, ----, 101 S.Ct. 183, 188, 66 L.Ed.2d 193 (1980) (Court "unaware of any rule generally exempting a judge from the normal obligation to respond as a witness when he has information material to a criminal or civil proceeding." (Footnote omitted.)) This would not extend to the functioning of the judicial process, as it is recognized to be "in the public interest to have judges who were at liberty to exercise their independent judgment about the merits of a case without fear of being mulcted for damages should an unsatisfied litigant be able to convince another tribunal that the judge acted not only mistakenly but with malice and corruption." (Citations omitted.) Id. Both the Supreme Court of Iowa and the United States District Court for the Northern District of Iowa properly limited discovery in this area.
 
 
 19
 We next review Randall's allegation of bias on the part of the Grievance Commission. Randall was allowed to raise this allegation in an interlocutory proceeding before the Supreme Court of Iowa. The court denied the challenge with the reservation that it could be raised in the de novo disbarment hearing before the court after the Grievance Commission had made its recommendation. Randall did not subsequently raise this issue before that court. While we believe that this allegation is probably barred by the doctrine of res judicata as outlined in Goodrich, supra, 511 F.2d at 318, we find that the Commission was not biased against Randall, by either "prejudgment of the facts or personal interest." Gibson v. Berryhill, 411 U.S. 564, 578, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973). Furthermore, the District Court also examined the merits of Randall's claim and could "find no violation of any constitutional rights." This court should give deference to the District Court's findings on this matter. Id. at 579, 93 S.Ct. at 1698.
 
 
 20
 The members of the Grievance Commission individually asked a number of questions of the witnesses. Randall complains of the members' activity in this regard and alleges that it demonstrates a bias against him. We think, to the contrary, that it demonstrates the Commission's interest in actually trying to ascertain the true facts of this somewhat complex interplay of human emotions and personal interests covering an adult lifetime of activity. The testimony elicited still leaves unanswered some pertinent questions, i. e., how the forged deed from Morningstar to Myers and Randall was notarized in 1967; what happened to the original warranty deed in 1956 from Morningstar to Myers and Randall antedating by one day the conveyance to Morningstar and which Randall is claiming gives him title to the land; and, further, why was that deed not filed of record? It appears, however, that the Grievance Commission adopted a very neutral stance in not allowing the initial complaint to be amended by the complainant or ordering the amendment itself. The Commission was patient with Randall and all the witnesses, allowing the witnesses and counsel all the time needed to present the testimony offered. The Grievance Commission even adjourned in the midst of its hearing to allow Randall to take an interlocutory appeal to the Iowa Supreme Court, alleging the bias of the Commission. We view the Commission as having objectively undertaken a not-too-pleasant task, and as having conscientiously considered the charges and the defense presented. Randall's due process rights were fully respected by the Commission.
 
 
 21
 Finally, we again note that Randall was given due notice and a plenary hearing before both the Grievance Commission and the Supreme Court of Iowa.[2] There were sufficient factual matters in the record concerning Randall's conduct to form a proper predicate for the sanctions imposed.
 
 
 22
 We also find no violation of Randall's equal protection rights concerning the disbarment proceedings. Randall also contends that he is being singled out for treatment because of his prominent position as one of the leading attorneys of the State of Iowa, and as a past president and other high official of the American Bar Association. We find this contention lacks merit. Suffice it to say that other prominent Iowa lawyers have been disciplined. The State Bar in Iowa has disciplined, although not disbarred, a former United States Congressman, a former president of the Young Lawyers Section of the Iowa State Bar Association, and a professor at the University of Iowa School of Law.
 
 
 23
 Randall also alleges unequal treatment in the punishment of disbarment imposed on him. While we do not feel it is incumbent upon the Ethics Committee counselor, Gaudineer, to show equality of treatment, as there are so many various factors involved in each bar disciplinary proceeding that the court must be given considerable leeway in meting out the sanctions imposed, we do feel that a defense of this type should be viewed as an affirmative one which falls upon the lawyer charged with the misconduct; from the record here, there is a total lack of evidence indicating that Randall has been singled out for punitive treatment. In addition, each disbarment proceeding must stand on its own factual situation. Here, though the sanction imposed was severe, it was within the permissible range under the law. We are not in a position, nor authorized, to second-guess the highest state court on the sanctions it imposes.
 
 III.
 
 24
 We next address the matter of the potential suspension or disbarment of Randall from this court. Randall was issued a show cause order on July 10, 1980, concerning why he should not be disbarred from this court. See Federal Rule of Appellate Procedure 46(b); Theard v. United States, 354 U.S. 278, 282, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957). Randall responded principally by challenging the factual basis of the Supreme Court of Iowa's opinion in his disbarment from that court. See Randall, supra, 285 N.W.2d at 161-64.
 
 
 25
 The limited standard of review of the factual findings of the Supreme Court of Iowa involving Randall was outlined in Selling v. Radford, supra, 243 U.S. at 46, 37 S.Ct. at 377; ante at ----. Accordingly, we have reviewed the entire record of the state disbarment proceedings, including reading the voluminous transcript of Randall's hearing before the Grievance Commission and the appendix filed in the Supreme Court of Iowa case. The evidence produced, based in large part upon Randall's uncontroverted testimony, established that Randall, on March 14, 1973, drew a will for Lovell Myers, his business partner for over twenty-five years, in which Myers left his entire estate, conservatively valued at over two million dollars, to Randall. We agree with the Supreme Court of Iowa that this action violated Ethical Canon 5-5 of the Iowa Code of Professional Responsibility for Lawyers, as in effect in 1973, which provided:
 
 
 26
 A lawyer should not suggest to his client that a gift be made to himself or for his benefit. If a lawyer accepts a gift from his client, he is peculiarly susceptible to the charge that he unduly influenced or overreached the client. If a client voluntarily offers to make a gift to his lawyer, the lawyer may accept the gift, but before doing so, he should urge that his client secure disinterested advice from an independent, competent person who is cognizant of all the circumstances. Other than in exceptional circumstances, a lawyer should insist that an instrument in which his client desires to name him beneficially be prepared by another lawyer selected by the client. (Emphasis added.)
 
 
 27
 The Supreme Court of Iowa found the "exceptional circumstances" clause did not apply in Randall's case. Randall, supra, 285 N.W.2d at 165. On appeal, Randall makes the same argument in favor of its application as he did in the Iowa proceedings. Randall contends that the long years of his business partnership with Lovell Myers should allow him to draw a will leaving him the entire estate.
 
 
 28
 We disagree. First, the amount of property involved, plus the fact that Myers had a living daughter and two grandsons, put Randall on notice that other parties might have a significant interest in pursuing a will contest if Randall were to draw a will naming himself as beneficiary. Second, circumstances surrounding the drawing of the will, namely the controversy concerning the land deed involving Lovell Myers and an employee, foreman Gilbert Morningstar, should have alerted Randall to the charges of overreaching or undue influence which might arise if he were to draw the will. Randall erred and erred grievously.
 
 
 29
 Randall next argues that even if he violated Ethical Canon 5-5 he should not be disbarred for a merely ethical, as opposed to disciplinary, violation. The Supreme Court of Iowa, in Committee on Professional Ethics and Conduct of the Iowa State Bar Association v. Behnke, 276 N.W.2d 838, 840 (Iowa), appeal dismissed, 444 U.S. 805, 100 S.Ct. 27, 62 L.Ed.2d 19 (1979), held that "violation of an ethical consideration, standing alone, will support disciplinary action." Randall contends that holding violates both due process and the ex post facto clause.
 
 
 30
 Randall's contention that violations of ethical canons could not lead to professional discipline, as that would be violative of due process, is not well taken. Ethical considerations are more than aspirational and are mandatory.[3] The Supreme Court of Iowa, in Matter of Frerichs, 238 N.W.2d 764, 769, specifically held:
 
 
 31
 All lawyers practicing before this court are bound by the canons and the provisions of the Iowa Code above set out. They are not free to view them merely as aspirational. A canon cannot be ignored by an attorney upon the claim he believes it conflicts with his view of a constitutionally protected right.
 
 
 32
 Furthermore, it appears that the prohibition contained in EC5-5, prohibiting the drafting of a will by an attorney making himself a beneficiary, is but the current articulation of a long-standing prohibition against that practice. Obviously such a situation is fraught with a high potential for overreaching and abuse. The prohibition in EC5-5 is also only a restatement of old Canon 9, Canons of the American Bar Association. In Re Krotenberg, 111 Ariz. 251, 527 P.2d 510 (1974); Columbus Bar Association v. Ramey, 32 Ohio St.2d 91, 290 N.E.2d 831 (1972); In Re Jones, 254 Or. 617, 462 P.2d 680 (1969); In Re Kneeland, 233 Or. 241, 377 P.2d 861 (1963); In Re MacFarlane, 10 Utah 2d 217, 350 P.2d 631 (1960); In Re Moore, 218 Or. 403, 345 P.2d 411 (1959); Lantz v. State Bar of California, 212 Cal. 213, 298 P. 497 (1931).
 
 
 33
 Randall also contends that application of EC5-5 to his situation constituted an ex post facto enforcement of that prohibition. The ex post facto contention falls for two reasons: (1) the ex post facto clause and concept is only applicable in criminal cases. See Galvan v. Press, 347 U.S. 522, 531 n.4, 74 S.Ct. 737, 742 n.4, 98 L.Ed. 911 (1954); Nicholson v. Judicial Retirement and Removal Commission, 562 S.W.2d 306, 308 (Ky.1978). And (2) there is no true ex post facto situation here presented, as a prohibition both in the old canons of professional responsibility and in the new codes have condemned the practice herein charged.
 
 
 34
 The Supreme Court of Iowa also found that Randall's representation of both his own and Myers's corporate interests in the Morningstar land title suit was a conflict of interest in violation of Iowa's Disciplinary Rules 5-101(A) and 5-104(A).[4] The court based this finding on Randall's suspicions concerning the forged deed involving Myers and Morningstar. We agree with the Supreme Court of Iowa that, in these circumstances, Randall was under a duty to withdraw from representation of Myers's fifty percent interest in the corporation.
 
 
 35
 We therefore find that Randall's actions with regard to the will and the representation of Myers's corporate interest warrant disbarment from this court.IV.
 
 
 36
 Finally, we turn to Randall's disbarment from the United States District Courts for the Northern and Southern Districts of Iowa. Both courts independently reviewed the proceedings before the Supreme Court of Iowa in accordance with the dictates of Selling v. Radford, supra, 243 U.S. at 50-51, 37 S.Ct. at 378-379, and found sufficient bases for disbarment in their courts. Given our disposition of Randall's disciplinary procedure before this court, ante at 905, the District Courts did not err in disbarring Randall.
 
 
 37
 John D. Randall, Sr. is ordered disbarred from this court.
 
 
 38
 The decisions of the District Courts are affirmed.
 
 
 
 [1]
 Randall challenged the Iowa disbarment proceedings by filing a 42 U.S.C. § 1983 (1976) remedy action in the United States District Court for the Northern District of Iowa against each of the justices of the Supreme Court of Iowa, alleging a denial of due process and equal protection. The District Court dismissed the action on May 20, 1980, finding it to be essentially a collateral attack on the decision of the Supreme Court of Iowa. Randall appeals this decision in Appeal No. 80-1451
 
 
 [2]
 In our review of Randall's allegations of impropriety concerning the Ethics Committee and the Grievance Commission, we have been unable to find any actions that can be raised to the level of a constitutional violation
 
 
 [3]
 We are not holding that every violation of an ethical consideration would be grounds for disciplinary action, but are holding that the violation herein involved, being significant and substantial, and having been found by the Iowa Supreme Court to be a basis for disciplinary proceedings, is also thought by us to constitute an appropriate basis for action
 
 
 [4]
 Iowa Disciplinary Rule 5-101(A) provides:
 Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.
 Disciplinary Rule 5-104(A) provides:
 A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.