# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1883

_____

In the Matter of:                *

Gwen G. Caranchini,          *    Appeal from the United States
                                     *    District Court for the Western
             Respondent/Appellant.    *    District of Missouri.
                                       *
                                       *

_____

Submitted:  September 22, 1998

Filed:  November 4, 1998

_____

Before BEAM, LAY, and LOKEN, Circuit Judges.

_____

BEAM, Circuit Judge.

Attorney Gwen Caranchini appeals from the district court's order of disbarment. The district court disbarred Caranchini in reciprocal disciplinary proceedings initiated after she was disbarred by the Missouri Supreme Court.  See In re Caranchini, 956 S.W.2d 910, 920 (Mo. 1997) (en banc), cert. denied, 118 S. Ct. 2347 (1998).  On appeal she argues that the district court's order of disbarment violated the Double Jeopardy Clause because the same conduct had already resulted in sanctions. Furthermore, she argues that the district court denied her due process because no hearing was held to relitigate the previously sanctioned conduct.  For the reasons set forth below, we affirm the district court.

## I.      BACKGROUND

Attorney Gwen Caranchini was sanctioned under Federal Rule of Civil Procedure 11 [Rule 11] once in 1989, twice in 1990, and once again in 1992. The sanctions were imposed in four separate federal court cases originating in the District of Kansas and the Western District of Missouri. Caranchini's conduct that led to the sanctions included, *inter alia*, filing suit before making a reasonable inquiry, and knowingly relying on a falsely manufactured document. In the process, Caranchini has paid in excess of $89,500 in sanctions. The sanctions were affirmed by this court and by the United States Court of Appeals for the Tenth Circuit. Full explanations of the sanctions can be found in Pope v. Federal Express Corp., 49 F.3d 1327 (8th Cir. 1995), White v. General Motors Corp., 977 F.2d 499 (10th Cir. 1992), Perkins v. General Motors Corp., 965 F.2d 597 (8th Cir. 1992), and Platt v. Jack Cooper Transport, Co., 959 F.2d 91 (8th Cir. 1992).

On January 4, 1993, the Office of Chief Disciplinary Counsel of Missouri sought to discipline Caranchini based on the federally sanctioned conduct. After a hearing, findings were made and an information seeking disciplinary action was filed in the Missouri Supreme Court in January 1995. The matter was then referred to a special master.

The special master held a hearing and reviewed all the federally sanctioned conduct. By reason of the doctrine of offensive non-mutual collateral estoppel,[1] the

---

[1]The doctrine of offensive non-mutual collateral estoppel permits "a litigant who was not a party to a prior judgment [to] use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). The Missouri Supreme Court applied this doctrine to Caranchini using a four step approach:

1) the identity of the issues involved in the prior adjudication and the present action, 2) whether the prior judgment was on the merits, 3) "whether the party against whom collateral estoppel is asserted was a

special master did not allow Caranchini to relitigate the facts or law relating to the sanctioned conduct. The special master examined the sanctioned behavior only to determine if it violated the Missouri Rules of Professional Conduct. During the special master's hearing, Caranchini was also given the opportunity to present mitigating evidence.[2] On April 23, 1997, the special master issued findings that detailed numerous violations of the Missouri Rules of Professional Conduct. The recommended punishment was a reprimand.

The Missouri Supreme Court reviewed the federally sanctioned conduct and the mitigating evidence de novo. Like the special master, it applied the doctrine of offensive non-mutual collateral estoppel to preclude relitigation of the facts established in the federal court sanctions. The Missouri Supreme Court found that "the record in this case clearly establishes that [Caranchini] intentionally submitted a false document, intentionally made false statements, and intentionally withheld material information." In re Caranchini, 956 S.W.2d at 919. Caranchini was then unanimously disbarred on December 23, 1997.

On January 14, 1998 the United States District Court for the Western District of Missouri issued an order to show cause why Caranchini should not also be disbarred in federal court. The district court found that "the misconduct determined by the

---

party or in privity with a party to the prior adjudication," and 4) whether the party had a full and fair opportunity in the prior adjudication to litigate the issue for which collateral estoppel is asserted.

In re Caranchini, 956 S.W.2d at 912-13 (quoting Oates v. Safeco Ins. Co. of America, 583 S.W.2d 713, 719 (Mo. 1979) (en banc)).

[2]During the adversarial hearing, Caranchini elicited favorable testimony of clients, attorneys, and law clerks. The evidence and testimony noted her eighteen years of legal practice, her dedication, and the suffering, both financial and physical, that she has endured as a result of the federal sanctions.

Missouri Supreme Court has been conclusively established." In re Caranchini, No. 98-174-D (W.D. Mo. Mar. 12, 1998) (en banc order disbarring Caranchini). The district court then deferred to the findings and judgment of the Missouri Supreme Court and unanimously disbarred Caranchini. She now appeals.

## II.   DISCUSSION

Caranchini first argues that disbarment by the district court constitutes a violation of the Double Jeopardy Clause. Second, she argues that her due process rights were violated by the district court's disciplinary proceedings. Caranchini also argues that the state disbarment proceedings similarly violated her double jeopardy and due process rights. However, we are without jurisdiction to review the Missouri Supreme Court's judgment of disbarment.[3] All of Caranchini's other arguments have been carefully reviewed and lack sufficient merit to be discussed.

### A.   Double Jeopardy

Caranchini argues that her disbarment violates double jeopardy because Rule 11 sanctions were previously imposed on the same conduct. Caranchini contends that she has been subject to multiple punishments for the same offense in violation of the Double Jeopardy Clause. See U.S. Const. amend. V; North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989). Although disbarment may be considered punishment "in common parlance,"

---

[3]See Randall v. Reynoldson, 640 F.2d 898, 901 (8th Cir. 1981). Courts, whether state or federal, have inherent authority to suspend or disbar attorneys admitted to practice before them. "The court's control over a lawyer's professional life derives from [their] relation to the responsibilities of a court." Theard v. United States, 354 U.S. 278, 281 (1957). Attorneys are representatives of the court and the authority to disbar is necessary to protect the public. See id. The Missouri Supreme Court exercised its authority and unanimously disbarred Caranchini.

Hudson v. United States, 118 S. Ct. 488, 493 (1997) (quotation sources omitted), we find that attorney discipline, including sanctions and disbarment, is not "punishment" for purposes of the Double Jeopardy Clause.

Other courts have considered this issue and have similarly concluded that there is no double jeopardy. See Mississippi State Bar v. Young, 509 So. 2d 210, 214 n.1 (Miss. 1987) ("Most states which have addressed the matter have held that disciplinary proceedings are not so criminal in nature as to evoke double jeopardy protections."); see also In re Caranchini, 956 S.W.2d at 914-15 (holding that disbarment proceedings do not violate double jeopardy); cf. Hudson, 118 S. Ct. at 496 (holding that sanctions and professional disbarment of bank officers did not create a double jeopardy obstacle for criminal indictments). Attorney discipline, including sanctions and disbarment, is not "punishment" for purposes of double jeopardy. See In re Brown, 906 P.2d 1184, 1191 (Cal. 1995); Colorado v. Marmon, 903 P.2d 651, 655 (Colo. 1995) (en banc). Instead, attorney discipline is designed to protect the public and is therefore remedial in nature. See Theard, 354 U.S. at 281 (stating that disbarment is a necessary power to protect the public).

We are persuaded on this issue by the practical reasoning in Office of the Disciplinary Counsel v. Campbell, 345 A.2d 616, 621 (Pa. 1975). The Campbell court states that, "[i]f disciplinary actions were viewed, for constitutional purposes, as placing an individual in jeopardy, an attorney who was convicted of a crime could not be disbarred for that crime. . . . the state would be compelled to have in its midst an uncensured attorney who is a convicted criminal." Id.

## B.    Due Process

Caranchini next argues that her due process rights were violated because the district court did not grant her a hearing to dispute the facts established in earlier litigation. The facts were proved in Rule 11 sanction proceedings. The sanctioned

conduct was then the foundation for the Missouri Supreme Court's disciplinary judgment. The federal district court, in turn, deferred to the findings and judgment of the Missouri Supreme Court and disbarred Caranchini. Caranchini argues that in her case, due process requires that each court hold a hearing to relitigate the sanctioned conduct de novo, and that each court issue its own findings of fact and conclusions of law.

Notwithstanding Caranchini's urging to review the sanctioned conduct de novo, federal courts generally defer to state court findings in disbarment proceedings and typically impose the identical discipline. See In re Hoare, No. 97-2005, 1998 WL 350885, at *3 (8th Cir. July 2, 1998). Although disbarment by state courts does not automatically result in disbarment in the federal courts, "high respect" is given "to the judgment of the state court in its disbarment proceedings." Randall v. Reynoldson, 640 F.2d 898, 901 (8th Cir. 1981).

In the context of federal court disbarment proceedings, narrow review of state court findings is permitted. The district court deferred to the findings of the Missouri Supreme Court and disbarred Caranchini. We review the district court's disciplinary order for abuse of discretion. See Hoare, 1998 WL 350885, at *3.

Federal courts will not defer to state court disciplinary findings and judgments when independent review of the state record reveals: 1) a state procedure that lacks due process because of failure to provide notice or an opportunity to be heard, 2) an "infirmity of proof," or 3) some other "grave reason" why deference should not be given. See Randall, 640 F.2d at 901-02 (quotations omitted). Caranchini argues that the federal courts should not defer in her case since the state procedures violated due process. She contends that due process was lacking because she was not given an opportunity to relitigate the federally sanctioned conduct. In making its findings, the Missouri Supreme Court did not provide a hearing to relitigate the sanctioned conduct, but applied, as indicated, the doctrine of offensive non-mutual collateral estoppel to

preclude relitigating issues determined by a prior valid judgment. See In re Caranchini, 956 S.W.2d at 912-13.

Caranchini had already received a hearing and full opportunity to litigate the sanctioned conduct in federal court. The Missouri Supreme Court also provided Caranchini with notice and an opportunity to be heard, wherein she was permitted to present mitigating evidence, on the issue of whether the federally sanctioned conduct violated the Missouri Rules of Professional Conduct. We find that due process was satisfied in Caranchini's case. Cf. Randall, 640 F.2d at 902 (finding no due process violation when collateral estoppel applied to factual basis for disbarment). Due process does not require relitigation of valid prior judgments.

We find that no due process violation, "infirmity of proof," or "grave reason" exists such that the district court should not defer to the state court findings. Absent one of these conditions, we will not engage in the kind of independent determinations of fact and law that Caranchini seeks. Therefore, the district court did not abuse its discretion by deferring to the state court findings and judgment.

## C. Reinstatement Proceedings

Mr. Justice Frankfurter commented that "[a] proceeding for disbarment of a lawyer is always painful." Theard, 354 U.S. at 279. Caranchini's case is certainly no different. With this in mind, we note that subsequent efforts by Caranchini might prove fruitful. We are cognizant that the Missouri Supreme Court permits the reinstatement of disbarred attorneys at an appropriate time. "[A]ny attorney or counselor at law removed from practice . . . on application to the supreme court . . . may be reinstated as such attorney or counselor at law, in the discretion of the court, at any time after one year from the date of such judgment of removal or suspension." Mo. Rev. Stat. § 484.270.

This is not a hollow remedy since the Missouri Supreme Court has often provided for leave to apply for reinstatement within a certain number of years. See, e.g., In re McMullin, 370 S.W.2d 151, 156 (Mo. 1963) (en banc); In re Foley, 364 S.W.2d 1, 9 (Mo. 1963) (en banc). In the event that application for reinstatement is made consistent with the applicable requirements, we are confident that the Missouri Supreme Court's careful review will show whether Caranchini has changed her fundamental approach to the practice of law and has embraced the professionalism and civility required of all representatives of the court. Our review of the record leads us to believe that such change may have occurred or be in the process of occurring as a consequence of the punishment she has been meted. We are confident that the federal courts would likely follow any reinstatement determination made by the Missouri Supreme Court. However, Caranchini's professional misfortune should not cloud the legal analysis.

## III.   CONCLUSION

Although it may seem to Caranchini as though a snowball has precipitated an avalanche in this case, it is incumbent upon courts to maintain integrity, professionalism and civility among its practitioners. The Missouri Supreme Court and the federal courts entrusted Caranchini with the right to represent others before their tribunals. Courts cannot allow a blizzard of unethical conduct to sweep across an unsuspecting public. We are not unsympathetic to the pleas of Caranchini, especially in light of the circumstances of her case, including the evidence presented in support of her rehabilitation, but this judgment reflects the protection of the public and not the unmitigated concerns of an individual.

We recognize the many payments which Caranchini has now made in terms of monetary sanctions, professional service, and genuine contrition. The idea that integrity, professionalism and civility should supplant "win at all cost" strategies has surely been a long lesson for Caranchini and should serve as a caution to every member

of the bar in this Circuit. Although the law compels us to affirm the district court, the record, along with Missouri's procedure for reinstatement, suggests that the future may lead to her rehabilitation.

The district court's order of disbarment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.