**In re Steven KRAMER, Petitioner–Appellant.**

**No. 01–55115.**

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 4, 2002 *

Filed March 6, 2002.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Neville L. Johnson, Johnson & Rishwain LLP, Los Angeles, California, for the appellant.

Before: O'SCANNLAIN and SILVERMAN, Circuit Judges, and REED,** District Judge.

O'SCANNLAIN, Circuit Judge.

We must decide whether a federal district in California may impose reciprocal discipline by disbarring an attorney on the basis of his disbarment from practice in New York.

I

In 1998, Steven Kramer was disbarred from practice in the State of New York. The misconduct that gave rise to his disbarment is described in *In re Kramer* ("*Kramer I*"), 235 A.D.2d 87, 664 N.Y.S.2d 1 (App.Div.1997), where the First Department of New York's Appellate Division found Kramer guilty of professional misconduct based on his misdeeds in two separate cases: one in New York, in which a federal district court dismissed Kramer's client's complaint and imposed sanctions on Kramer, *id.* at 2, and one in New Jersey, which resulted in Kramer's suspension from practice before the courts of New Jersey for a period of six months, *id.* at 4. The Appellate Division then referred Kramer's case to the First Department's Disciplinary Committee "to consider evidence in mitigation or aggravation, ... and to recommend the appropriate sanctions." *Id.*

After a hearing, the Committee recommended disbarment. The Appellate Division agreed, noting that over the course of

---

** The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

eleven years, Kramer had been "sanctioned, criticized, or otherwise disciplined 38 times for professional misconduct involving numerous clients...." *In re Kramer* ("*Kramer II*"), 247 A.D.2d 81, 677 N.Y.S.2d 576, 577 (App.Div.1998) (collecting cases). Accordingly, after reviewing the proceedings before the Committee, the Appellate Division ordered that Kramer be "disbarred from practice as an attorney and counselor-at-law in the State of New York," and that his name be "struck from the roll of attorneys and counselors-at-law in the State of New York...." *Id.* at 578.

Shortly after New York disbarred Kramer, the Central District of California acted to impose reciprocal discipline on him pursuant to then-controlling Local Rule 1.9 which provided that

> [u]pon receipt of reliable information that a member of the Bar of this Court ... has been ... disbarred from the practice of law by the order of ... the Bar, Supreme Court, or other governing authority of any State, ... this Court shall immediately impose an order of suspension or disbarment.
>
> This Court's order of suspension or disbarment shall be filed by the Chief Judge without the necessity of any notice to the affected attorney or any hearing....

C.D. Cal. Local Rule 1.9. In accordance with this rule, the district court entered an order disbarring Kramer. Kramer appealed, arguing that the district court's rule failed to provide him due process.

We agreed with Kramer. In *In re Kramer* ("*Kramer III*"), 193 F.3d 1131 (9th Cir.1999), we recognized that "district courts have the authority to supervise and discipline the conduct of attorneys who appear before them." *Id.* at 1132. That power, however, "must be exercised within

the parameters of due process." *Id.* We recognized that in federal court reciprocal disbarment proceedings "a state court's disciplinary action is not conclusively binding on federal courts." *Id.; see also* Stephen Gillers, Regulation of Lawyers: Problems of Law and Ethics 880 (6th ed. 2002) ("A state court determination of disbarment ... is not conclusively binding on the federal courts.") (internal quotation marks omitted). Accordingly, we explained, "while federal courts generally lack subject matter jurisdiction to review the state court decisions, ... a federal court may 'examine a state court disciplinary proceeding if the state court's order is offered as the basis for suspending or disbarring an attorney from practice before a federal court.'" *Id.* at 1132–33. We then observed that

> [f]rom the sparse record available to us here, it does not appear that the district court, prior to disbarring him, gave Kramer any notice, conducted any hearing or issued him an order to show cause. There is also no evidence that the district court engaged in an independent review of the New York court's record. Instead, Kramer's disbarment appears to have been based solely on the New York court's order.

*Id.* at 1133. We opined that this approach was inconsistent with the Supreme Court's opinion in *Selling v. Radford,* 243 U.S. 46, 50–51, 37 S.Ct. 377, 61 L.Ed. 585 (1917). We concluded that under *Selling,* "at a minimum, the district court should issue an order to show cause to Kramer and, unless he concedes that the action of the New York courts satisfies *Selling* and its progeny, the district court should review the state court record." *Kramer III,* 193 F.3d at 1133. Because the district court had not done this, we reversed and re-

manded.[1]

On remand, the district court issued Kramer an order to show cause why he should not be disbarred. Kramer was allowed to submit a brief in response to the order. Moreover, after granting Kramer's various requests for continuances spanning nine months, the district court held a hearing on the order to show cause, at which Kramer testified. After the hearing, and after considering "the papers filed by Mr. Kramer, the argument and testimony at the hearing and the record from the proceedings in New York," the court found that Kramer had not shown that his New York disbarment suffered from any of the three infirmities identified in *Selling*. Accordingly, it issued an order imposing reciprocal disbarment upon Kramer, based on his New York disbarment. Kramer timely filed this appeal.

## II

■ As we explained in *Kramer III*, under *Selling*, a federal court's imposition of reciprocal discipline on a member of its bar based on a state's disciplinary adjudication is proper unless an independent review of the record reveals: (1) a deprivation of due process; (2) insufficient proof of misconduct; or (3) grave injustice which would result from the imposition of such discipline. *Kramer III*, 193 F.3d at 1132(citing *Selling*, 243 U.S. at 50–51, 37 S.Ct. 377). As a threshold issue, we must determine who bears the burden of proof under *Selling*, and what, exactly, that burden is.

■ While this court has not yet spoken on the issue, those courts that have generally have concluded that in reciprocal discipline cases, it is the respondent attorney's burden to demonstrate, by clear and convincing evidence, that one of the *Selling* elements precludes reciprocal discipline. *See, e.g., In re Calvo*, 88 F.3d 962, 967 (11th Cir.1996) ("The burden is on the disbarred attorney to show good cause why he should not be disbarred, and the district court is not required 'to conduct a *de novo* trial in the first instance of [the attorney's] fitness to practice law.' ... Instead, it must determine whether 'the record underlying the predicate state disbarment ... reveal[s] the kind of infirmities identified in *Selling*.' "); *In re Hoare*, 155 F.3d 937, 940 (8th Cir.1998); *In re Friedman*, 51 F.3d 20, 22 (2d Cir.1995) ("As *Selling* makes clear, it was Fried-

**1.** The Central District of California has amended its reciprocal disbarment rule in a way that incorporates our teachings in *Kramer III*. The new rule, effective October 1, 2001, provides:

> Upon receipt of reliable information that a member of the Bar of this Court ... has been ... disbarred from the practice of law by ... the Bar, Supreme Court, or other governing authority of any State, ... this Court shall issue an Order to Show Cause why an order of ... disbarment should not be imposed by this Court.
>
> ....
>
> If the attorney files a written response to the Order to Show Cause within the time specified stating that he contests the entry of an order of suspension or disbarment, then the Chief Judge or other district judge who may be assigned shall determine whether an order of suspension or disbarment shall be entered. Where an attorney has been suspended or disbarred by another Bar, ... the attorney in his response to the Order to Show Cause, must set forth facts establishing one or more of the following: (a) the procedure in the other jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; (b) there was such an infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court should not accept as final the other jurisdiction's conclusion(s) on that subject; (c) imposition of like discipline would result in a grave injustice; or (d) other substantial reasons exist so as to justify not accepting the other jurisdiction's conclusion(s)....

man's burden to demonstrate by clear and convincing evidence that ... the New York procedures were wanting."). We find these cases persuasive, and we agree.

Kramer argues for the inverse result. Relying principally upon *In re Crayton*, 192 B.R. 970 (9th Cir.B.A.P.1996), he contends that a court must find by clear and convincing evidence that none of the three *Selling* factors is met. *See id.* at 975("A court may disbar or suspend an attorney only upon the presentation of clear and convincing evidence."). Kramer, however, conflates reciprocal discipline with direct imposition of discipline. *Crayton* dealt with the imposition of disbarment by a bankruptcy court as a sanction for misconduct in *that* court. Recognizing the severity of a sanction of disbarment, which for all practical purposes ends an attorney's career before the relevant court, the BAP required clear and convincing proof of misconduct to justify the sanction. This case, in contrast, is about reciprocal discipline; in such cases, an attorney's misconduct has already been adjudicated by another court or disciplinary agency. Thus, a court seeking to impose reciprocal discipline engages in a function far different from a court seeking to impose discipline in the first instance. Before imposing reciprocal discipline, a court need only conduct a deferential review of the proceedings that resulted in the initial discipline imposed to satisfy itself that the discipline was not inappropriate under one or more of the *Selling* factors. *See In re Caranchini*, 160 F.3d 420, 424 (8th Cir.1998) (explaining that in reciprocal disbarment cases, " 'high respect' is given 'to the judgment of the state court in its disbarment proceedings' ").

We therefore hold that, in cases where a federal court seeks to impose reciprocal discipline on a member of its bar based on discipline imposed on the attorney by an-

other court or disciplinary authority, it is the attorney's burden to demonstrate, by clear and convincing evidence, that one of the *Selling* elements precludes reciprocal discipline.

## III

### A

Turning to the merits, we observe that Kramer raises a swirling miasma of arguments against the propriety of reciprocal disbarment. Kramer first contends that the district court failed to make an independent examination of the record of his New York disciplinary proceedings, in violation our admonition in *Kramer III*. The district court's order imposing disbarment, however, disposes of this contention. In that order, the court stated that it reviewed the record; Kramer offers no evidence that the court's order is mendacious.

### B

Kramer next argues that reciprocal disbarment would violate the first prong of *Selling*, because he was deprived of due process in various ways in connection with the proceedings that gave rise to his New York disbarment. He challenges both the New Jersey suspension proceedings, which formed part of the basis for the finding of misconduct in *Kramer I*, and the New York penalty hearing before the Committee, which resulted in his disbarment in *Kramer II*.

Kramer first contends that although the Committee's recommendation of disbarment in New York was based largely on its consideration of the various instances throughout his career in which courts imposed sanctions on him, he was not informed that these instances would be considered in determining the appropriate sanction for his misconduct. Accordingly, he argues that he was deprived of notice

and an opportunity to be heard with respect to his prior disciplinary history. Kramer, however, misapprehends the function of the 3685 penalty phase. His principal error is his repeated characterization of his prior instances of sanctions as "additional offenses" of which the Committee decided he was guilty, and his concomitant conclusion that he deserved notice and an opportunity to be heard on those "offenses." *Kramer I* decided Kramer's substantive guilt before the penalty phase began. Kramer's prior instances of sanctionable conduct were thus not separate offenses to be charged and tried, but instead, indicators considered in determining the proper sanction for the misconduct of which he was found guilty in *Kramer I*. Findings by numerous courts that Kramer violated applicable ethical and procedural rules unquestionably are probative on the question of what kind of discipline was adequate to punish Kramer and to deter future unethical conduct. Kramer thus had no right to relitigate his disciplinary history.

■ Kramer makes a similar misstep when he argues that his disbarment in New York violated due process because it violated the First Amendment. He contends that because the Committee took into account a statement he made to the press concerning his misconduct when determining the appropriate sanction, the penalty recommended by the Committee and imposed by the Appellate Division violates his right to freedom of speech.[2] In support of this argument, Kramer cites myriad cases in which courts have held

that an attorney cannot be punished for speaking out where the statement does not interfere with the attorney's obligation to conduct a fair trial or in some way present a clear and present danger to the administration of justice. *E.g., In re Snyder,* 472 U.S. 634, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985); *Standing Comm. on Discipline of the United States Dist. Ct. for the Central Dist. of Cal. v. Yagman,* 55 F.3d 1430 (9th Cir.1995). But again, he misses the point. Kramer was not disbarred in New York *for making* his bold statement to the reporter; rather, that statement was evidence—along with his extensive prior disciplinary history—relevant to the determination of what sanction would impose sufficient discipline and deter future unethical conduct. *See Kramer II,* 677 N.Y.S.2d at 578("Over-all, the evidence presented at the hearing demonstrates that respondent has shown neither remorse nor self-control."); *id.* (finding disbarment appropriate "especially since [Kramer's misconduct] is likely to continue due to respondent's evident imperviousness to sanctions and his indifference to the consequences of his actions").

Kramer also complains that each of two panel members missed some of the two-day penalty phase hearing before the Committee in New York. Kramer has not shown, however, that this violated his due process rights. The hearing was fully transcribed. Further, each panel member put his name on the panel's final recommendation, indicating that the document represented the views of the entire panel.

2. During the penalty phase hearing, the Committee considered an article that appeared in *Lawyer's Weekly USA,* in which Kramer was quoted as describing the findings of his numerous ethical violations as being "for chicken-shit stuff." In the article, Kramer compared himself to a superstar athlete who is willing to risk breaking the rules although he

is sometimes penalized. Sanctions, he explained, are merely a necessary cost of playing the game zealously. When the Committee questioned him about these statements, Kramer stood by them, explaining that in his view, his conduct was wholly appropriate, and was simply "part of being a tough litigator."

Finally, Kramer argues that one of the panel members in the New Jersey disciplinary proceedings was biased because he opposed Kramer in other court proceedings. Our precedents, however, foreclose this argument. *See Yagman,* 55 F.3d at 1435–36 & n. 9 (rejecting challenge to the composition of a disciplinary panel where members were opposing counsel on various of respondent's representations). Because we do not sit en banc, we decline to reconsider them. *See Jeffries v. Wood,* 114 F.3d 1484, 1492 (9th Cir.1997) ("Only an en banc panel may overturn existing Ninth Circuit precedent.").

### C

■ Kramer further argues that there was insufficient proof of his misconduct in connection with his New York disbarment, and thus, that reciprocal disbarment would violate the second prong of *Selling.* Again, however, he does not attack *Kramer I's* conclusion that he was guilty of misconduct, but only tries to recharacterize or to explain away the adjudicated instances of ethical violations that the Committee (and in turn, the Appellate Division) weighed in determining the appropriate punishment for his misconduct.

Faced with a similar claim, the Second Circuit recently responded as follows:

> [The respondent attorney] also claims that "[t]here was such an infirmity of proof establishing the alleged misconduct as to give rise to the clear conviction that this court could not, consistent with its duties, accept as final the conclusion of the other court." While it is true that, should [he] prove the above state of affairs by clear and convincing evidence, this Court would not impose reciprocal discipline, [he] must do more than state the existence of his defense to carry that burden. [The respondent attorney] presents no evidence in support of his statement and, in fact, admits to engaging in the conduct for which he was disbarred.... Therefore, this Court finds that [he] has failed to prove by clear and convincing evidence that there was any infirmity of proof whatsoever establishing the alleged misconduct....

*Committee on Grievances of the United States Dist. Ct. for the Eastern Dist. of New York v. Feinman,* 239 F.3d 498, 507(2d Cir.2001). The same reasoning applies here. Kramer presents only conclusory assertions of insufficient proof, and those are insufficient to show a violation of the second prong of *Selling.*

### D

■ Finally, Kramer argues that the imposition of reciprocal disbarment in the Central District of California would result in grave injustice, in conflict with the third prong of *Selling.* He contends that disbarment was excessive punishment for his misconduct in New York and New Jersey. We are unpersuaded.

In reviewing a reciprocal disbarment, we do not re-try an attorney for misconduct. *See Feinman,* 239 F.3d at 508(noting that "by arguing that defects in the [state court] proceedings justify lesser discipline, [the respondent attorney] seeks a review of the merits of the state proceedings that is beyond the circumscribed scope of review in reciprocal disciplinary proceedings"). Instead, we inquire only whether the punishment imposed by another disciplinary authority or court was so ill-fitted to an attorney's adjudicated misconduct that reciprocal disbarment would result in grave injustice. As the Appellate Division noted in *Kramer II,* Kramer had been "sanctioned, criticized, or otherwise disciplined 38 times for professional misconduct involving numerous clients" prior to the misconduct of which he was found guilty in *Kramer I. Kramer II,* 677 N.Y.S.2d at 577.

Given this extensive history of inappropriate behavior and ethical violations, we are confident that the penalty imposed on Kramer by the Appellate Division was well within the range of appropriate sanctions. *See In re Attorney Discipline Matter*, 98 F.3d 1082, 1088(8th Cir.1996) (explaining, where respondent attorney challenged underlying disbarment as excessive, that "[i]n each disciplinary proceeding, a state's highest court considers many factors and 'must be given considerable leeway in meting out the sanctions imposed.' ... In appellant's case, disbarment was within the appropriate range of sanctions, and '[w]e are not in a position, nor authorized, to second-guess the highest state court on the sanctions it imposes' ") (citations omitted); *see also id.* at 1089(explaining that the district court did not abuse its discretion in finding no grave injustice in reciprocal disbarment because "[a]ppellant did not conduct himself in accordance with the rules of the profession"). We therefore conclude that reciprocal disbarment would not result in grave injustice to Kramer.

## IV

In *Kramer III* we set forth the procedure that a district court should follow in imposing reciprocal discipline upon a member of its bar, based on discipline imposed on that attorney by another disciplinary authority or court. On remand, the district court followed our instructions to the letter, and beyond: it issued Kramer an order to show cause, allowed him to submit briefing, and even held a hearing, at which Kramer testified. After reviewing the New York disbarment proceedings the court determined that reciprocal disbarment was appropriate. We agree. Kramer has not demonstrated at all—let alone by clear and convincing evidence—that reciprocal disbarment is inappropriate under any of the *Selling* factors. Accordingly,

the district court did not abuse its discretion by reciprocally disbarring him.

**AFFIRMED.**

C.D. Cal. Local Rule 83–3.1.9. The rule change has no real impact on this case because, as we shall explain, the district court actually followed this new procedure on remand.