08-9002-am, 07-9064-am

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2009

(Decided: April 6, 2010)

Docket Nos. 08-9002-am, 07-9064-am

_____

In re Hector M. Roman,

*Attorney*.

_____

Before:  Cabranes, Sack, and Wesley, Circuit Judges.

This Court's Committee on Admissions and Grievances ("the Committee") has recommended that Hector M. Roman, an attorney admitted to the bar of this Court, be disciplined.  We adopt the Committee's findings of fact, publicly reprimand Roman for the misconduct described in the Committee's report, reciprocally suspend him for a six-month period based on a prior suspension imposed by the United States Court of Appeals for the Ninth Circuit, and suspend him for an additional one-month period based on his misconduct in this Court.

Hector M. Roman, Esq., New York, N.Y., pro se.

**PER CURIAM:**

By order filed in November 2007, this panel referred Hector M. Roman to this Court's Committee on Admissions and Grievances ("the Committee") for investigation of the matters described in that order and preparation of a report on whether he should be subject to disciplinary or other corrective measures. Supplemental referral orders were filed in April 2008.

During the Committee's proceedings, Roman had the opportunity to address the matters discussed in the Court's referral order, to testify under oath at a hearing held in December 2008, and to present post-hearing supplementary materials. Roman represented himself during the Committee's proceedings. Presiding over the hearing were Committee Chair Mary Jo White, Esq., and the Honorable Howard A. Levine. In January 2009, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Roman with a copy of the Committee's report, and Roman filed a response in April 2009.

In its report, the Committee concluded: (a) Roman was subject to reciprocal discipline, pursuant to Second Circuit Local Rule 46.1(f), based on the prior imposition of discipline by the United States Court of Appeals for the Ninth Circuit; and (b) as a separate matter, Roman was subject to discipline for his behavior in this Court, based on clear and convincing evidence that he had engaged in conduct "unbecoming a member of the bar" within the

2

meaning of Federal Rule of Appellate Procedure 46(c). *See* Report at 12-15. After finding various aggravating and mitigating factors, *see id.* at 7, 9, 11, 12, 14, 15, the Committee recommended that Roman be suspended from practice before this Court for a three-month period, based on both the Ninth Circuit's suspension and his conduct before this Court, with each basis operating as an independent ground for the recommended suspension, *see id.* at 15. In response, Roman states that he does not contest the Committee's recommendation that he be suspended for three months based on the Ninth Circuit suspension, but asks that the suspension not be based on his conduct before this Court. Response at 3-8.

Upon due consideration of the Committee's report, the underlying record, and Roman's response, we adopt the Committee's factual findings concerning Roman's Ninth Circuit suspension and his misconduct in this Court. We also adopt the Committee's conclusions that Roman's Ninth Circuit suspension warrants reciprocal suspension by this Court and that his separate misconduct in this Court was sufficiently serious that it warrants independent disciplinary action. However, for the reasons discussed below, we impose disciplinary sanctions that differ somewhat from those recommended by the Committee.

### Reciprocal Discipline

Former Second Circuit Rule 46.1(f) governed this Court's reciprocal discipline procedures until January 1, 2010, when it

3

was superseded by current Second Circuit Local Rule 46.2(c).  We need not decide which version of the rule governs Roman's case, since the same result is reached under both versions.  Former Local Rule 46.1(f), in pertinent part, provided as follows:

> (1)  In all cases in which an order disbarring an attorney or suspending the attorney from practice ... has been entered in any other court of record, federal or state, ... the clerk shall enter an order for the court ... disbarring the attorney or suspending the attorney from practice in this court upon terms and conditions comparable to those set forth by the other court of record.
>
> (2) Within [a specified time period], a motion may be filed in this court either by such attorney or the Committee for a modification or revocation of the order of this court.  Any such motion shall set forth specifically the facts and principles relied on by applicant as showing cause why a different disposition should be ordered by this court.

Former Second Circuit Rule 46.1(f)(1)-(2).  Current Local Rule 46.2(c), in pertinent part, provides as follows:

> (2) Reciprocal Order. When the court receives a copy of an order entered by an attorney disciplinary authority disbarring or suspending an attorney from practice, the clerk enters an order disbarring or suspending the attorney from practice before this court on comparable terms and conditions.
>
> (3) Motion to Modify or Vacate. Within [a specified time period], the attorney may move to modify or vacate the order.

Second Circuit Local Rule 46.2(c)(2)-(3).

Although this Court has not yet explicitly ruled on the issue, we now make clear that former Local Rule 46.1(f) and current Local Rule 46.2(c) reflect a rebuttable presumption that the reciprocal discipline imposed by this Court will be identical

4

– or as close to identical as our rules and the circumstances permit – to the discipline imposed by the prior court or other disciplinary authority. This presumption, although not explicitly referred to as such, has long guided this Court's reciprocal discipline practice and is consistent with the practice of other circuits. *See In re Williams*, 398 F.3d 116, 119-20 (1st Cir. 2005) ("Given the limited nature of our inquiry, the norm will be for this court to impose discipline which is substantially similar to that imposed by the state court"; also noting that the court's disciplinary rule requires imposition of "substantially the same discipline as was imposed by the original court"); *In re Kramer*, 282 F.3d 721, 727 (9th Cir. 2002) ("we inquire only whether the punishment imposed by another disciplinary authority or court was so ill-fitted to an attorney's adjudicated misconduct that reciprocal disbarment would result in grave injustice"); *In re Fallin*, 255 F.3d 195, 197 (4th Cir. 2001) (court presumes, pursuant to explicit language of local rule, that reciprocal discipline will be identical to original discipline); *In re Hoare*, 155 F.3d 937, 940 (8th Cir. 1998) ("Although a state court disciplinary action is not conclusively binding upon the federal judiciary, federal courts are nevertheless obliged to accord a high level of deference to state court disbarment proceedings. Thus, when a district court learns that a member of its bar has been subject to discipline by another jurisdiction, the identical discipline is typically imposed.")(citations omitted). *See also*

5

ABA Model Rules for Lawyer Disciplinary Enforcement, R. 22(D) (2002) (providing that court "shall impose the identical discipline" as the prior jurisdiction, unless certain criteria are satisfied, and that "[t]he burden is on the party seeking different discipline ... to demonstrate that the imposition of the same discipline is not appropriate"); ABA Model Federal Rules of Disciplinary Enforcement, R. II(D) (1978, 1991) (providing for identical discipline unless certain criteria are satisfied).[1]

Furthermore, the disciplined attorney bears the burden of demonstrating, by clear and convincing evidence, that a different disposition would be appropriate (unless the Committee, or the Court itself, moves for modification or revocation). *See In re Friedman*, 51 F.3d 20, 22 (2d Cir. 1995) (applying burden of proof in context of appeal from district court's imposition of reciprocal discipline). An attorney seeking to demonstrate either that reciprocal discipline should not be imposed at all or that

---

[1] The Supreme Court's seminal decision concerning reciprocal discipline, *Selling v. Radford*, reflects a similar presumption – the Court stated that it would "recognize the condition created by the judgment of the state court" – *i.e.*, the state court's finding that the attorney lacked "fair private and professional character, without the possession of which there could be no possible right to continue to be a member of [the Supreme Court's] Bar" – unless the attorney demonstrated to the contrary. 243 U.S. 46, 50-51 (1917). However, while the Supreme Court suggested that the state disbarment in that case would be followed by Supreme Court disbarment if the attorney did not meet his burden, the Court did not explicitly discuss whether the presumption covered both the finding of poor character and the severity of the discipline. The state court's finding of misconduct in *Selling*, if not successfully challenged, may have required Supreme Court disbarment even without a presumption concerning the severity of discipline.

the "terms and conditions" of the reciprocal discipline should not be "comparable" to those imposed by the other attorney disciplinary authority, Second Circuit Rule 46.2(c)(2); Former Second Circuit Rule 46.1(f)(1), must satisfy the standard set forth in *Selling v. Radford*, 243 U.S. 46 (1917), which requires the attorney to show:

> 1. [t]hat the . . . procedure [used by the prior court] from want of notice or opportunity to be heard, was wanting in due process; 2, that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not, consistently with our duty, accept as final the conclusion on that subject; or 3, that some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar [or impose any other disciplinary sanction imposed by the prior court] except upon the conviction that, under the principles of right and justice, we were constrained so to do.

*Selling*, 243 U.S. at 51. In sum, the *Selling* standard bars reciprocal discipline when the Court finds "(1) absence of due process in the [prior disciplinary] procedure, (2) substantial infirmity in the proof of lack of private and professional character, or (3) 'some other grave reason' sufficient to indicate that reciprocal disbarment [or other reciprocal discipline] [i]s inconsistent with 'principles of right and justice.'" *In re Tidwell*, 295 F.3d 331, 333-34 (2d Cir. 2002)(quoting *Selling*, *supra*).

As noted in *In re Edelstein*, 214 F.3d 127 (2d Cir. 2000), several other courts have supplemented the *Selling* criteria with a

7

fourth reason for not imposing reciprocal discipline – namely, that a reciprocal order should not issue if an attorney's misconduct warrants "substantially different discipline" than that imposed by the court that imposed the original discipline. *Edelstein*, 214 F.3d at 131-32 (quoting Rule of Disciplinary Enforcement of the Court of Appeals for the First Circuit II(D)(4)). We treat the noted fourth category as subsumed by the "grave reason" category set forth in *Selling. See id.* at 132 (noting the fourth ground for relief considered by some courts but relying on *Selling* to conclude that no "grave reason" warranted revoking an order of reciprocal discipline); *cf. Kramer*, 282 F.3d at 727-28 (rejecting argument that original disbarment constituted excessive punishment and concluding that reciprocal disbarment would not result in grave injustice); *see also Theard v. United States*, 354 U.S. 278, 282 (1957) (finding state court disbarment decision "brings title deeds of high respect ... [b]ut it is not conclusively binding on the federal courts," and concluding that federal court disbarment in that case was foreclosed by the "grave reason" prong of *Selling*).

Although *Selling* addressed reciprocal discipline imposed by a federal court based on a state court's prior disciplinary decision, we have found it equally applicable to a federal court's imposition of reciprocal discipline based on another federal court's prior disciplinary decision. *See Edelstein*, 214 F.3d at 131-32. Thus, it applies here.

8

Since Roman does not contest the process he received in the Ninth Circuit or allege an infirmity of proof, we now consider only whether it has been demonstrated that some "grave reason" prohibits the imposition of a six-month reciprocal suspension. In doing so, we do not determine *de novo* what sanction the Ninth Circuit should have imposed; instead, we accord great deference to the Ninth Circuit's determination. *See, e.g.*, *Theard*, 354 U.S. at 282; *Edelstein*, 214 F.3d at 132; *Williams*, 398 F.3d at 119-20; *Kramer*, 282 F.3d at 727-28; *Hoare*, 155 F.3d at 940.

In the present case, Roman raised several arguments in support of his position that this Court should not impose the same discipline as the Ninth Circuit. The Committee rejected one of his arguments, agreed with three others, and independently found that five additional mitigating factors warranted a suspension of three months, rather than a six-month suspension matching the term imposed by the Ninth Circuit. *See* Report at 13-14. Notably, the Committee found that none of the arguments made by Roman raised a "grave reason" justifying a departure from the practice of imposing reciprocal discipline. *See id.* at 14. We concur in the Committee's rejection of Roman's argument that his purchase of case management software remedied the problems cited by the Ninth Circuit. *See id.* However, for the following reasons, we do not believe that the remaining factors constitute a grave reason justifying a different suspension term.

First, many or most of the cited factors were considered by

9

the Ninth Circuit when it determined that a six-month suspension was appropriate, and there is no indication that the weight accorded to them by the Ninth Circuit was so inadequate as to present a grave reason justifying departure from that sanction. *See In re Roman*, 05-80100, Report of Appellate Commissioner, at 32-33, 34-35 (9th Cir. Jan. 23, 2007) (discussing mitigating factors), Order Adopting Report (9th Cir. Mar. 30, 2007).

Second, the fact that the New York State reciprocal order based on the Ninth Circuit's order only imposed a public censure, not a suspension, is of limited persuasive value. Although the New York State courts generally give deference to the court that imposed the original discipline, they do not apply the *Selling* "grave reason" standard when determining the appropriate form of reciprocal discipline. *See, e.g.*, *In re Whitehead*, 37 A.D.3d 86, 88 (1st Dep't 2006) ("In deciding on the appropriate sanction in reciprocal discipline matters, it is generally accepted that the state where the misconduct occurred has the greatest interest in the sanction imposed. However, when the sanction in the home state deviates significantly from our precedent, this Court has departed from that general policy of deference.") (citations omitted); *In re Lever*, 60 A.D.3d 37, 44 (1st Dep't 2008) ("Although ... this Court in a reciprocal disciplinary proceeding will often defer to the sanction initially imposed by a foreign jurisdiction, our precedents are equally clear that we are not bound by that sanction, and may impose a more severe penalty if

10

the circumstances warrant."); *In re Marshall*, 67 A.D.3d 1122, 1123 (3d Dep't 2009)("this Court is not required to adhere to the disciplinary sanction imposed by the foreign jurisdiction and may impose a greater or lesser sanction"). In any event, the New York State order contains no facts or reasoning that would justify, under *Selling,* a sanction different than that imposed by the Ninth Circuit. *See In re Roman*, 48 A.D.3d 25, 28-29 (2d Dep't 2007).

Third, we do not consider Roman's misconduct before the Ninth Circuit to have occurred at such a remote time in the past that it renders reciprocal discipline at the current time unjust. Both the Ninth Circuit Appellate Commissioner's report and Roman's submissions in the present matter indicate that the Ninth Circuit's suspension was based on misconduct occurring in and after 2003 and that much of the misconduct involved cases filed in 2004, 2005 and 2006. *See In re Roman*, 05-80100, Report of Appellate Commissioner, at 12-18, 24-29; *In re Roman*, 07-9064-am (2d Cir.), Roman's May 2008 Response to Order to Show Cause, at 38 ¶ 20 (dating Ninth Circuit "problems" to 2003 through 2006).

Because the mitigating factors in this case, considered together, do not amount to a grave reason justifying a suspension different than that imposed by the Ninth Circuit, we impose a six-month reciprocal suspension.

**Roman's Misconduct in this Court**

We concur with the Committee's recommendation that a period of suspension also is appropriate for Roman's misconduct in this

11

Court.  Lesser sanctions, such as a public or private reprimand or censure, would require either less egregious misconduct or greater mitigating factors.  *See, e.g.*, *In re Liu*, 07-9065-am, 282 Fed. Appx. 7, 7-8 (2d Cir. May 27, 2008) (although conduct at issue "generally would warrant a significantly greater sanction," public censure was imposed instead, based on mitigating factors and imposition of other, onerous corrective measures); *cf. In re Flannery*, 186 F.3d 143, 146-49 (2d Cir. 1999) (imposing, on four attorneys, discipline ranging from monetary sanctions and public censure to two-year suspension for causing dismissal of clients' direct criminal appeals by failing to file briefs and ignoring subsequent orders to show cause why discipline should not be imposed).

We acknowledge Roman's argument that his misconduct in this Court "stemmed from the same set of facts and circumstances which led to the original suspension" in the Ninth Circuit.  Response to Committee Report at 3, 5, 7, 8.  Although different cases and courts were involved, we understand this argument to mean that the same case management deficiencies led to Roman's problems in both circuits.  We agree, but only in part.  As noted by the Committee, several instances of misconduct in this Court post-dated the Ninth Circuit's November 2005 order to show cause why he should not be disciplined for certain similar misconduct in that court.  *See* Report at 14-15.  Moreover, neither the Ninth Circuit's analysis nor logic suggests that the Ninth Circuit's sanction was intended

12

to cover, or should cover, any misconduct other than that discussed in the Ninth Circuit's order. In fact, it is quite possible that, had the Ninth Circuit been aware of Roman's additional misconduct in this Court, a longer suspension would have been imposed. Thus, we do not see complete overlap between the conduct addressed by the Ninth Circuit and that addressed in this order. Additionally, the fact that Roman continued to engage in misconduct in this Court after being put on notice by the Ninth Circuit about similar misconduct constitutes a significant aggravating factor.

We also are disturbed by Roman's misrepresentations to this Court when he (a) permitted others to sign his name to pleadings that he failed to review prior to their filing in this Court, and (b) permitted materially inaccurate information to be submitted to the Court in those pleadings. Although Roman stated that he "wasn't very aware of what was going on," Hearing Tr. at 27:25, we believe that he either knew of the misrepresentations, or was guilty of reckless disregard, since he knew that the cases existed and knew that they could not proceed to briefing and decision without the input, and signature, of counsel of record. *See* Fed. R. App. P. 32(d) ("Every brief, motion, or other paper filed with the court must be signed by the party filing the paper or, if the party is represented, by one of the party's attorneys."). Far too many cases were involved, and far too much time passed, for any reasonable attorney to claim that he did not know how his cases

13

were advancing to final decision. Finally, we also find that the other mitigating factors in this case do not present the type of extraordinary circumstances that might warrant divergence from the sanction called for by Roman's misconduct.

Due to the partial overlap between the misconduct in the two circuits, we do not impose a lengthy term of suspension in addition to that imposed by the Ninth Circuit. However, we find that the lack of complete overlap warrants a consecutive, rather than concurrent, additional suspension. We believe that the additional, consecutive, term of suspension should be one month, for a total suspension term of seven months.

### Conclusions

Upon due consideration, it is hereby ORDERED that, except as noted above, the Committee's findings and recommendations are adopted by the Court, and Roman is PUBLICLY REPRIMANDED and SUSPENDED from practice before this Court for a period of seven months, based on the misconduct described in the Committee's report. The suspension period will commence on the date of filing of this order. It is further ORDERED that Roman communicate with his clients in all of his pending cases, as specified in the Committee's report. *See* Report at 15, Conclusion, ¶ 2.

The text of this panel's November 2007 and April 2008 orders and the Committee's report are appended to, and deemed part of, the present order for the following disclosure purposes. Roman must disclose this order to all clients in cases currently pending

14

in this Court and to all courts and bars of which he is currently a member, and as required by any bar or court rule or order. Furthermore, the Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other published decisions of this Court, and to serve a copy on Roman, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, Second Department, the Executive Office for Immigration Review, the bars and courts listed on page 15 of the Committee's report, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.

## APPENDIX 1

### Text of November 2007 order

For the reasons that follow, Hector M. Roman is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46(h). We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

Since September 2005, this Court has dismissed at least 24 of the 71 petitions for review for which Roman was counsel of record, based on Roman's failure to comply with this Court's scheduling orders.[2]  Additionally, where Roman has moved to reinstate

---

[2] *See* Second Circuit Docket Nos. 00-4048; 04-1362 (reinstatement motion denied); 04-1928; 04-1993; 04-2564; 04-2750; 04-3851; 04-4350; 04-4701; 04-4881, 04-5939; 04-6137 (reinstatement motion granted); 04-6590 (extension motion filed one day after due date for brief; reinstatement motion granted);

15

petitions, he has often relied on the same excuse for failing to comply with the applicable scheduling orders: that he had not received a copy of the scheduling order or had not received a response to his motion for an extension of time. *See*, *e.g.*, *Villa-Castano v. Board of Immigration Appeals ("BIA")*, 04-3851-ag, motion filed Dec. 21, 2005; *Nirmal Singh v. BIA*, 04-6137-ag, motion filed May 2, 2006; *Sarbjit Kaur v. BIA*, 04-4881-ag, motion filed Jan. 10, 2007; *Mehmi v. Gonzales*, 06-3471-ag, motion filed Dec. 26, 2006; *Deol v. Gonzales*, 06-5157-ag, motion filed Mar. 20, 2007. However, as this Court noted in *Villa-Castano*, Roman either knew, or likely knew, that scheduling orders existed in the above-cited cases, *see Villa-Castano,* 04-3851-ag, order filed Dec. 28, 2005, and, in any event, he never explained in any of his motions for extensions of time or reinstatement why he had failed to ascertain the status of his motions, or the appeals themselves, despite the passage of long periods of time.

In March 2007, this Court ordered Roman to provide this Court with a list of cases in which he had filed a motion to reinstate on behalf of petitioners after the cases had been dismissed for any reason. *See Ranjit Singh v. BIA*, 05-5463-ag, order filed Mar. 23, 2007. Although Roman did so, he failed to list the cases docketed under: 03-4699; 03-4700; 03-4702; 03-4706; 04-1993; 04-3851; 04-6137; 04-6590; 05-1679; and 06-4582. *See Ranjit Singh*, 05-5463-ag, response filed Apr. 10, 2007. Roman's response also did not provide any explanation for the listed defaults, although that may have resulted from the fact that the Court's order did not explicitly request an explanation. *See id.*, order filed Mar. 23, 2007, response filed Apr. 10, 2007. The motion to reinstate *Ranjit Singh* was denied. *See id.*, order filed Aug. 2, 2007.

In addition to Roman's history of defaults described above, he also may have submitted deficient briefs to this Court. The Committee is requested to determine whether Roman engaged in sanctionable conduct by:

(a) presenting vague or conclusory legal analysis on pertinent issues, s*ee, e.g.*, *Ashvinder Kaur v. BIA,* 03-4699-ag, brief filed Apr. 18, 2007; *Jeet Singh v. BIA*, 06-1389-ag, order filed May 3, 2007, at 4 (finding CAT claim waived, based on failure to present meaningful challenge to agency's

---

05-1000 (reinstatement motion denied); 05-1679; 05-2587; 05-5463 (reinstatement motion denied); 05-6413; 06-0920; 06-3471 (reinstatement motion granted); 06-3681; 06-5157 (reinstatement motion denied); 06-5229; and 06-5264. *See also* 04-4881 (dismissed for failure to file form C/A).

denial); *Amerjeet Kaur v. BIA*, 06-1491-ag, brief filed July 28, 2006;

(b) raising claims that were not exhausted before the agency, without explaining why the claim should nonetheless be considered, *see, e.g.*, *Ashvinder Kaur v. BIA,* 03-4699-ag, brief filed Apr. 18, 2007, at 25-26 (discussing CAT claim), order filed Oct. 16, 2007, at 5-6 (dismissing CAT claim as unexhausted);

(c) presenting irrelevant matters and/or failing to challenge a dispositive agency decision, *see, e.g.*, *Harmeet Singh v. Gonzales*, 06-4582-ag, order filed Aug. 24, 2007, at 3 (finding that underlying denial of asylum application was not properly before Court); *Oberoi v. BIA*, 05-6413-ag, brief filed Mar. 26, 2007, order filed Aug. 8, 2007, at 3-4 (upholding agency decision, and finding it unnecessary to discuss arguments presented in brief, since dispositive decision was not challenged; also noting that arguments relied to some extent on non-record submissions); *Mehmi v. Gonzales*, 06-3471-ag, order filed Aug. 16, 2007, at 3-4 (finding petitioner waived challenge to dispositive agency decision); *Gurpal Singh v. BIA*, 05-6840-ag, brief filed Nov. 13, 2006 (arguing merits of original asylum denial, which was not under appeal, and presenting conclusory argument concerning BIA's denial of petitioner's second motion to reopen); *Bhag Singh v. BIA*, 04-5038-ag, brief filed Nov. 23, 2005 (BIA's summary dismissal not acknowledged or challenged in brief)*;* and

(d) misstating facts or issues, *see, e.g.*, *Amerjeet Kaur v. BIA*, 06-1491-ag, brief filed July 28, 2006 (incorrectly referring to Kaur as "Mr. Singh" and with male pronouns, and to this Court as the BIA, and stating that "Punjab police" persecuted and will continue to persecute Kaur, despite the fact that Kaur is not from Punjab). *See also Jeet Singh*, 06-1389-ag, docket note for June 26, 2006 (stating that submitted brief failed to comply with Federal Rule of Appellate Procedure 28).

Upon due consideration of the matters described above, it is ORDERED that Hector M. Roman is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
           Michael Zachary
           Supervisory Staff Attorney
           Counsel to Grievance Panel

**APPENDIX 2**

**Text of April 2008 order docketed under 07-9064-am**

By order entered in November 2007, Hector M. Roman was referred to this Court's Committee on Admissions and Grievances for investigation of the matters described in that order. Since that time, additional information regarding Roman has come to the attention of this panel.

In March 2007, the United States Court of Appeals for the Ninth Circuit sanctioned Roman for, *inter alia*, failing to properly supervise an employee of his law firm, negligently relying on an inadequate case-management and calendaring system, failing to adequately prosecute cases, and violating various court rules and orders. *See In re Roman*, No. 05-80100 (9th Cir. Mar. 30, 2007). The Ninth Circuit suspended Roman from practicing law in that court for six months and imposed a monetary sanction of $1,000, with reinstatement contingent upon Roman showing, *inter alia*, that he is in good standing before all courts and bars in which he is admitted, and has completed ten hours of continuing legal education courses. *Id.* As a result of the Ninth Circuit disciplinary order, the New York Appellate Division, Second Department, imposed reciprocal discipline on Roman, although it limited its disciplinary measures to a public censure. *See In re Roman*, No. 2007-04450 (2d Dep't Dec. 26, 2007). Finally, in January 2008, this Court issued an order, pursuant to Second Circuit Local Rule 46(f)(1), publicly censuring Roman based upon the New York Appellate Division's order. *See In re Roman*, No. 08-9002-am (2d Cir. Jan. 3, 2008). By separate order of this panel, this Court's censure order entered under docket number 08-9002-am has been vacated, with the issue of reciprocal discipline under Local Rule 46(f) being referred to the Committee.

Upon due consideration, it is ORDERED that the additional information described above is referred to this Court's Committee on Admissions and Grievances for its consideration in conjunction with the information provided in this panel's November 2007 referral order. The Committee should consolidate the two matters docketed under 08-9002-am and 07-9064-am.

18

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
        Michael Zachary
        Supervisory Staff Attorney
        Counsel to Grievance Panel

## APPENDIX 3

## Text of April 2008 order docketed under 08-9002-am

By order filed on January 3, 2008, this Court, pursuant to Second Circuit Local Rule 46(f), publicly censured Hector M. Roman, based on a prior public censure issued by the New York State Appellate Division, Second Department. However, Local Rule 46(f) does not provide for such a disposition.

Aside from the Appellate Division's public censure order, we are informed that, in March 2007, the United States Court of Appeals for the Ninth Circuit sanctioned Roman for, *inter alia*, failing to properly supervise an employee of his law firm, negligently relying on an inadequate case-management and calendaring system, failing to adequately prosecute cases, and violating various court rules and orders. *See In re Roman*, No. 05-80100 (9th Cir. Mar. 30, 2007). The Ninth Circuit suspended Roman from practicing law in that court for six months and imposed a monetary sanction of $1,000, with reinstatement contingent upon Roman showing, *inter alia*, that he is in good standing before all courts and bars in which he is admitted, and has completed ten hours of continuing legal education courses. *Id.*

Upon due consideration of the matters described above, it is hereby ORDERED that the January 3, 2008 order is vacated. It is further ORDERED that the issue of whether Roman should be disciplined pursuant to Local Rule 46(f), based on the Ninth Circuit's March 2007 order, is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rules 46(f) and (h), and the Rules of the Committee on Admissions and Grievances.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
        Michael Zachary
        Supervisory Staff Attorney
        Counsel to Grievance Panel

19

**APPENDIX 4**
**January 2009 Report of the Committee**
**on Admissions and Grievances**

**REPORT & RECOMMENDATION**
**Re: In re Hector M. Roman, #07-9064-am**

I.  Introduction

By order dated November 20, 2007 and by two subsequent orders issued on April 1, 2008, the United States Court of Appeals for the Second Circuit ("the Court") referred Hector M. Roman to this Committee for investigation of his conduct before the Court and for preparation of a report on whether he should be subject to disciplinary or other corrective measures.

Roman is an active immigration practitioner before the Court, and the Court's orders raise several areas of concern regarding his conduct, including: (1) frequent defaults on scheduling orders, (2) boilerplate motions, (3) defective briefing, and (4) previous disciplinary sanctions against Roman. Roman was previously suspended by the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") for six months for declining to properly supervise an associate, relying upon inadequate case management systems, failing to prosecute numerous cases and violating court rules and orders.[1] As a form of reciprocal discipline, the Supreme Court of the State of New York, Appellate Division, Second Judicial Department ("New York Appellate Division") imposed public censure on Roman.

In light of Roman's conduct before the Court and as reciprocal discipline with regard to the sanctions imposed on Roman by the Ninth Circuit, the Committee recommends that Roman be suspended from practice before the Court for a period of three months.

---

[1]  Prior to being suspended in 2007, Roman was also sanctioned with a $500 fine by the Ninth Circuit for filing a frivolous stay motion and failing to obey a court order. *See In re: Hector M. Roman,* No. 05-80100 (9th Cir. Jan. 23, 2007) (Report and Recommendation).

II.    The Referral Orders

    A.    **Referral Order I (November 20, 2007)**

    The Court initially referred Roman to the Committee by order dated November 20, 2007 ("Referral Order I"). Referral Order I stated that, since September 2005, the Court had dismissed at least 24 of the 71 petitions for review for which Roman was counsel of record, based upon Roman's failure to comply with the Court's scheduling orders. The order also noted that Roman had submitted boilerplate motions in connection with these defaults; according to the Order, where Roman has moved to reinstate defaulted petitions, he has "often relied on the same excuse for failing to comply with the applicable scheduling orders: that he had not received a copy of the scheduling order or had not received a response to his motion for an extension of time." Referral Order I, at 2. The Court also expressed concern that Roman had submitted deficient briefs to the Court. *Id.*, at 2-3.

    B.    **Referral Order II (April 1, 2008)**

    In a subsequent April 1, 2008 order from the Court ("Referral Order II"), the Court informed the Committee that in a January 3, 2008 Order, the Court had publicly censured Roman based upon the previously mentioned public censure issued by the New York Appellate Division.[2] Referral Order II, at 1. However, Referral Order II explained that Local Rule 46(f) does not provide for such a disposition, and vacated the January 3, 2008 Order.[3]

    In Referral Order II, the Court also stated that, in March 2007, the Ninth Circuit had sanctioned Roman for, *inter alia,* failing to properly supervise an employee of his law firm, negligently relying on an inadequate case-management and calendaring system, failing to adequately prosecute cases, and violating various court rules and orders. Referral Order II, at 1 (citing *In re Roman*, No. 05-80100 [9th Cir., Mar. 30, 2007]).[4] The Court referred to the Committee the issue of whether Roman should be reciprocally disciplined pursuant to Local Rule 46(f), based on the Ninth Circuit's March 30, 2007 order. *Id.*, at 2.

---

[2]    The New York Appellate Division's order, *In re Hector M. Roman*, No. 07-4450 (N.Y. App. Div. Dec. 26, 2007), is appended to this Report and Recommendation as Exhibit A.

[3]    The Court's rules do not provide for the imposition of public censure, as opposed to suspension or disbarment, as a form of reciprocal discipline. *See* Local Rule 46(f)(1).

[4]    The Ninth Circuit's January 23, 2007 Report and Recommendation and March 30, 2007 Order are appended to this Report and Recommendation as Exhibits B and C.

2

## C.     Referral Order III (April 1, 2008)

In a third referral order from the Court ("Referral Order III"), dated April 1, 2008, the Court asked the Committee to consider, in determining appropriate sanctions against Roman: (1) the conduct set forth in Referral Order I, (2) the imposition of sanctions on Roman by the Ninth Circuit in March 2007, and (3) the New York Appellate Division's reciprocal imposition of public censure on Roman. Referral Order III, at 1-2.

## III.     This Disciplinary Proceeding

On March 17, 2008, this Committee issued an Order to Show Cause regarding Roman's conduct as alleged in Referral Order I. By letter dated March 21, 2008, Roman was provided with copies of Referral Orders II and III. After requesting an extension of time on April 14, 2008, which was granted, Roman submitted a comprehensive written response to the Order to Show Cause ("Response") on May 5, 2008. A hearing was initially scheduled for June 18, 2008, but Roman requested a waiver of the hearing.

By letter dated October 30, 2008, the Committee requested additional documents from Roman concerning his client retainer agreement. In response, Roman submitted a second submission to the Committee on November 26, 2008 ("Second Response"). Although Roman waived a hearing, the Committee decided to hold a hearing, which occurred on December 3, 2008, conducted by a sub-committee consisting of Mary Jo White and the Hon. Howard A. Levine. Roman appeared *pro se*, and presented no witnesses, but responded under oath to questions. On December 26, 2008, Roman provided a post-hearing submission to the Committee ("Third Response").

## IV.     Factual Background

The following facts are taken from court records, Roman's May 5, 2008 written submissions to the Committee and testimony provided at the December 3, 2008 hearing.

Roman is currently a managing partner at Roman & Singh LLP, located at 37-18 73rd Street, Suite 401, Jackson Heights, New York 11372. He graduated from Hofstra University School of Law in 1994, and passed the New York and New Jersey bar examinations during that year. Roman also passed the California bar exam in 1996. In 1997, Roman formed Roman & Singh LLP with attorney Jaspreet Singh. Roman has an active practice in bankruptcy, criminal law, matrimonial and family law, residential real estate transactions, commercial transactions and immigration law. Roman's partner, Mr. Singh, focuses primarily on immigration law. Immigration matters account for 70 percent of the firm's total caseload. Roman currently has 15-16 asylum cases pending before the Second Circuit, which is representative of his average caseload over the past few years.

Roman is currently admitted to practice in New York, New Jersey and California, and is a member in good standing of the Federal District Courts for the Eastern District of New York, Southern District of New York, Northern District of New York and Northern District of California.

On March 30, 2007, Roman was suspended from practice before the United States Court of Appeals for the Ninth Circuit for six months and was required to pay a monetary sanction of $1,000. Under the Ninth Circuit suspension order, reinstatement before the court was contingent upon Roman submitting the following: (1) a written showing that he is familiar with, and willing to comply with, the Federal Rules of Appellate Procedure, Ninth Circuit rules, and the Ninth Circuit's orders; (2) evidence that he is in good standing, with no disciplinary actions pending, in all courts and bars to which he is admitted; and (3) proof that he has successfully completed six hour-units of continuing legal education ("CLE") in the areas of immigration law or federal appellate practice, and an additional four hour-units of CLE in the area of law office management, in addition to the hour-units required of all active attorneys. Exhibit C, at 2.

As a result of the disciplinary sanctions imposed by the Ninth Circuit, Roman was reciprocally suspended from the United States Court of Appeals for the Third Circuit, the Federal District Court for the District of New Jersey, the Department of Homeland Security ("DHS"), the Board of Immigration Appeals ("BIA") and the Immigration Courts (Executive Office for Immigration Review, "EOIR"). Each of the reciprocal suspensions were for a period of six months and ended in 2007. According to Roman, these sanctions were imposed solely as reciprocal discipline; Roman was not found to have engaged in misconduct before those tribunals. As previously stated, on December 26, 2007, the New York Appellate Division imposed reciprocal discipline on Roman by issuing a public censure.

In his submissions to the Committee, Roman said that he had not sought reinstatement in any of the jurisdictions from which he was suspended, including the Ninth Circuit, because his primary practice is in New York state and federal courts. Roman emphasized that "[b]y limiting my practice to courts located within New York state, I will be able to better control my caseload and case management going forward into the future." Response, at 3. However, at the hearing, Roman explained that he eventually plans to move for readmission to the DHS, BIA and EOIR. Hearing Transcript ("Tr.") at 15:15-15:25; 17:13-17:20. Roman added that, in order to move for readmission before those tribunals, he must first be readmitted to the Ninth Circuit. *Id.* Roman has complied with two of the Ninth Circuit conditions for readmission – payment of a fine and attendance at a CLE program. Tr. 17:22-18:9. Roman plans to complete the only remaining requirement for readmission, filing a motion for reinstatement, at some point in the future. *Id.*

## V.     Legal Standard

Under the Rules of this Committee,

> An attorney may be subject to discipline or other corrective
> measures for any act or omission that violates the rules of
> professional conduct or responsibility of the state or other
> jurisdiction where the attorney maintains his or her principal
> office, or the rules of professional conduct of any other state or
> jurisdiction governing the attorney's conduct. An attorney may
> also be subject to discipline or other corrective measures for any
> failure to comply with a Federal Rule of Appellate Procedure, a
> Local Rule of the Court, an order or other instruction of the Court,
> or a rule of professional conduct or responsibility of the Court, or
> any other conduct unbecoming a member of the bar.

Rules of the Committee on Admissions and Grievances, Rule 4.

"A court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule." Fed. R. App. P. 46(c). "Conduct unbecoming a member of the bar" may include any conduct "contrary to professional standards that show[s] an unfitness to discharge continuing obligations to clients or courts, or conduct inimical to the administration of justice." *In re Snyder*, 472 U.S. 634, 645 (1985). For "[m]ore specific guidance," we may look to "case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *Id.* at 646 n.7.

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. *See, e.g., Gadda v. Ashcroft*, 377 F.3d 934, 940 (9th Cir. 2004), *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004), *Matter of Rabinowitz*, 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993), *United States v. Song*, 902 F.2d 609 (7th Cir. 1990), *Matter of Kraft*, 543 N.Y.S.2d 449 (N.Y. App. Div. 1989), *In re Bithoney*, 486 F.2d 319 (1st Cir. 1973). Such conduct is also sanctionable under the applicable professional rules and standards. The American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5. The Disciplinary Rules of New York's Lawyer's Code of Professional Responsibility require that "[a] lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer," D.R. 6-101(a)(3); in addition, the Code's Ethical Canons require that the lawyer should represent his or her client "zealously," Canon 7-1, and that he or she "be punctual in fulfilling all professional commitments," Canon 7-38.

5

"Any finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Rules of the Committee on Admissions and Grievances, Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, we should generally consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *See* ABA Standards § 3.0. This Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from *pro bono* or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Rules of the Committee on Admissions and Grievances, Rule 6.

VI.     The Alleged Misconduct

A.     **Defaults on Scheduling Orders**

The evidence demonstrates that Roman failed to comply with court scheduling orders, and failed to prosecute his clients' cases diligently.

Roman acknowledges wrongdoing in one case, *Kaur v. BIA*, Docket No. 05-1000-ag. According to Roman, he "admit[s] to law office failure in that instance." Response, at 18. Roman stated that he explained the dismissal to the client and filed motion to reinstate, the brief and the joint appendix free of charge. However, the motion to reinstate was denied.

With regard to 16 of the 24 petitions that were dismissed for Roman's failure to comply with the Court's scheduling orders, Roman submits that he lost contact with the clients. According to Roman, in several of these instances, the clients did not pay their legal fees or respond to his telephone and written inquiries. With the exception of *Kaur*, discussed above, Roman decided not to file briefs in these cases due to his inability to communicate with the clients, but admittedly, Roman failed properly to seek to withdraw, or to stipulate to the dismissal of the appeal. Accordingly, even if Roman's clients were not in fact prejudiced by Roman's failure to file the briefs, Roman's failure to comply with proper procedures for withdrawal or dismissal of the appeal violated the Court's scheduling orders and his obligation either to represent his clients or terminate the representation. Moreover, Roman's conduct disrupted the Court's proceedings and burdened the Court's staff with additional work. *See Bennett v. Mukasey*, 525 F.3d 222, 225 (2d Cir. 2008); N.Y. Code D.R. 2-110(A)(2) ("A lawyer shall not withdraw from employment [without] complying with applicable laws and rules").

In another seven cases, Roman asserts that failure to file briefs in a timely manner resulted from circumstances outside of his control, including: failure to receive the administrative record, a client's actions while he was proceeding *pro se* prior to Roman's representation, the Court's *sua sponte* dismissal of an action, failure of subsequently retained counsel to file a timely brief, and deportation of the petitioner prior to the due date of the brief.

6

Roman subsequently filed motions to reinstate eleven of the dismissed petitions; five of those motions were granted, five were denied and one was withdrawn. In those five cases in which Roman unsuccessfully moved to reinstate, the record does not show whether the petitioners were substantially prejudiced. According to Roman, he did not believe that the outcomes would have been different in most of the defaulted cases, but he conceded that some clients could have been prejudiced. Tr. 36:6-36:20. In any case, it is apparent that Roman's conduct had the potential to cause significant injury to his clients.

Since the defaults and the commencement of disciplinary proceedings against him in the Ninth Circuit, Roman has taken steps to improve his office management, including installing case management and calendaring software. Tr. 18:11-19:24. Roman believes that these new systems have successfully addressed the firm's deadline issues. *Id.* In addition, Roman is now aware that, when clients are uncooperative in prosecuting their appeals, he should file motions to withdraw. Tr. 35:16-36:5 ("[S]ince this investigation has started, I have made the appropriate motion to withdraw on two matters where clients were not responding to me . . . ."). The Committee has confirmed that in 2008, Roman did not default on any cases and timely applied for extensions of time in all but one instance.[5]

Both aggravating and mitigating factors are present. The aggravating factors considered by the Committee include: (1) Roman's prior disciplinary sanctions by the Ninth Circuit for failure to comply with that court's scheduling orders; (2) Roman's pattern of dilatory conduct; and (3) the vulnerability of Roman's immigrant clients. ABA Standards § 9.22(a), (c) & (h). The mitigating factors present are: (1) Roman's good faith effort to rectify the consequences of his misconduct by filing motions to reinstate those cases that were dismissed for failure to comply with the Court's scheduling orders; (2) Roman's remorse; (3) Roman's cooperation with these proceedings and (4) absence of a dishonest or selfish motive – however, although Roman may not have *intended* to neglect his clients, it was Roman's decision to greatly increase his caseload without making adequate provision to protect his clients from the risks inherent in an over-stretched practice. ABA Standards § 9.32(d), (l), (e) & (b).

## B.    Boilerplate Motions

In a number of cases, Roman submitted boilerplate motions for extensions of time and motions to reinstate stating that he either had not received a copy of the scheduling order or had not received a response to a previous motion for an extension of time. According to the Court, Roman "either knew, or likely knew, that scheduling orders existed in those cases." Referral Order I, at 2. For instance, in the case of *Villa-Castano v. BIA*, No. 04-3851-ag, the petitioner's motion to reinstate argues that petitioner's counsel never received the briefing schedule. Tr. Ex.

---

[5]    In *Kaur v. Mukasey*, No. 08-2633, Roman filed a motion for an extension of time on September 19, 2008, two days after the brief was due. The Court granted the motion.

7

10. However, the docket shows that the petitioner filed a motion for an extension of time on March 28, 2005, clearly indicating that petitioner's counsel was, in fact, aware of the briefing schedule. *Id.*

According to Roman's written response, all of the extension requests were based upon either a need for additional time to prepare, loss of contact with the client, or delays in obtaining the administrative record. In his Response, Roman does not explain why, if these were the reasons why he needed extensions, he represented to the Court that he had not received scheduling orders or had not received a response from the Court to a previous request for an extension. Roman also does not explain why he used boilerplate motions, rather than crafting individual motions for each request that he made to the Court.

At the hearing, Roman admitted that he had not personally prepared the misleading motions to reinstate in the cases listed in the referral order. Tr. 20:5-22:8. According to Roman, his partner, Mr. Singh, and/or Mr. Singh's secretary, prepared the motions to reinstate and signed Roman's initials to the documents. Tr. 22:9-25:21. Roman explained that, for a period of several years during which the boilerplate motions were filed, he was admitted to practice before the Second Circuit and the Ninth Circuit, while Mr. Singh was not. Tr. 25:23-26:8. Mr. Singh would handle the firm's immigration cases before these courts, but Roman was officially the counsel of record; accordingly, Roman's name was on all of the documents filed with the courts:

> My name went on the Ninth Circuit cases and my name went on the Second Circuit cases. I was loosely following these cases, but mainly relying on my partner to handle these cases, and for that I take full responsibility, again. A lot of the work that was performed I relied on my partner, even though I should have said to my partner, if these are your cases and if these are your clients who you're taking in these cases, then I think it's best if you get admitted into the Second Circuit and handle these cases in your name. Same for the Ninth Circuit.
>
> \* \* \*
>
> During the time that a lot of these problems came, to be honest with you, you Honor, I wasn't very aware of what was going on. I relied, and my signature was signed without my knowledge, and without my consent, and it's a tough situation.

Tr. 26:9-26:21; 27:23-28:4. According to Roman, Mr. Singh is now admitted to the Ninth Circuit and handles all of the firm's cases before that court. Tr. 26:22-26:25. Roman continues to handle the Second Circuit cases, and since 2007, has personally overseen the day-to-day management and filings in those cases. Tr. 26:25-27:22. Roman no longer permits Mr. Singh to file documents before the Second Circuit under Roman's name. 60:17-61:13.

8

Roman was also asked whether he had omitted any substantive discussion of the boilerplate motions in his response to the Committee in order to avoid addressing the issue of whether his partner had filed motions before the Court under his name. Tr. 58:2-60:16. Roman said it was possible that he had omitted a thorough discussion of the boilerplate motions in order to avoid this issue, but he was not certain that he had done so. *Id.* As the Committee generally found Roman to be credible, there is no clear and convincing evidence that he deliberately misled the Committee in his written response.

Roman's conduct, in allowing motions to be filed before the Court that (1) misrepresented that he served as counsel in those cases and had approved such submissions and (2) were misleading with regard to the reasons for moving to reinstate and/or requesting an extension of time, is in clear violation of DR 1-102(A)(4), which holds that "[a] lawyer or law firm shall not: . . . [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation." Moreover, to the extent that Roman was responsible for supervising Mr. Singh's handling of cases for which he was counsel of record, he should have taken reasonable efforts to ensure that Mr. Singh's representations to the Court were accurate and did not violate any disciplinary rule. DR 1-104(B), (C) & (D).[6]

The aggravating factors with regard to this conduct are: (1) multiple offenses; and (2) vulnerability of Roman's immigrant clients. ABA Standards § 9.22(d) & (h). A mitigating factor is Roman's full and free disclosure to the Committee of his culpability in this conduct. ABA Standards § 9.32(e).

---

[6] DR 1-104(B), (C) & (D) provide that:

B. A lawyer with management responsibility in the law firm or direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the disciplinary rules.

C. A law firm shall adequately supervise, as appropriate, the work of partners, associates and non-lawyers who work at the firm. The degree of supervision required is that which is reasonable under the circumstances, taking into account factors such as the experience of the person whose work is being supervised, the amount of work involved in a particular matter, and the likelihood that ethical problems might arise in the course of working on the matter.

D. A lawyer shall be responsible for a violation of the Disciplinary Rules by another lawyer or for conduct of a non-lawyer employed or retained by or associated with the lawyer that would be a violation of the Disciplinary Rules if engaged in by a lawyer if:

1. The lawyer orders, or directs the specific conduct, or, with knowledge of the specific conduct, ratifies it; or

2. The lawyer is a partner in the law firm in which the other lawyer practices or the non-lawyer is employed, or has supervisory authority over the other lawyer or the non-lawyer, and knows of such conduct, or in the exercise of reasonable management or supervisory authority should have known of the conduct so that reasonable remedial action could be or could have been taken at a time when its consequences could be or could have been avoided or mitigated.

## C.     Non-Refundable Fee Retainer

The Committee also finds that the standard retainer agreement that Roman used for a time was in violation of the Disciplinary Rules in New York; therefore, Roman's use of such an agreement with his clients is sanctionable misconduct. In his Response, Roman attaches Exhibit J, which he describes as the "sample retainer letter which we provide to our clients." Response, at 20-21. Page 2 of Exhibit J provides as follows:

> *You understand and agree that any legal fees paid are not*
> *refundable under any circumstances,* and that if you wish to
> terminate this Retainer Agreement you will first make the next
> payment following the last payment already made or due according
> to this Retainer Agreement, as well as pay all prior payments
> overdue plus pay all outstanding disbursements expended on this
> immigration matter.

(Emphasis added).

It is now well-established that non-refundable retainer agreements constitute *per se* violations of the Disciplinary Rules of New York's Code of Professional Responsibility. DR2-110A (3) ("A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned."); *see also* DR2-106 (A), (C)(3) (prohibiting charging of "excessive" fees and fees "proscribed by law or rule of court"); *see also Matter of Cooperman*, 83 N.Y.2d 465, 471 (1994); *Matter of Perez-Olivo*, 820 N.Y.S.2d 14, 15, 17-18 (N.Y. App. Div. 2006).

By letter dated October 30, 2008, the Committee asked Roman to submit a supplemental written response detailing his use of the non-refundable retainer agreement, including a list of cases in which clients had requested refunds of their retainers and were denied refunds pursuant to the agreement. Roman was also asked to submit any subsequent retainer agreements used and to provide a statement addressing whether such agreements comply with applicable law, rules and regulations.

In his response, Roman stated that he began using a retainer agreement that referred to a non-refundable retainer in 2005. Second Response, at 1. According to Roman, in crafting this agreement, he relied upon the language set forth in a sample representation letter posted by the American Immigration Lawyers Association ("AILA") on its website. *Id.* at 1 & Exhibit B. Roman only used the non-refundable retainer language in the representation letters for clients who sought to file Second Circuit appeals. *Id.* at 1-2. Roman declared that no such clients have ever requested refunds of legal fees. *Id.* Roman also emphasized that the non-refundable retainer language was intended to refer only to legal services already performed, as he would never withhold legal fees for services that were not rendered. *Id.* at 2; *see also* Tr. 48:6-49:11.

10

Roman also said that, upon receiving the Committee's letter, he had revised his retainer agreement to omit the non-refundable retainer language. *Id.* He submitted the revised retainer agreement to the Committee in his Second Response. *Id.*, Exhibit A. At the hearing, Roman also stated that he would further edit the revised retainer agreement in order to make it clear that clients would only be required to pay for services rendered. Tr. 46:10-49:23.

An aggravating factor with regard to this conduct is the vulnerability of Roman's immigrant clients. ABA Standards § 9.22(h). There are several mitigating factors: (1) absence of prior discipline, (2) absence of a dishonest or selfish motive, (3) good faith effort to rectify the consequence of his misconduct, (4) full cooperation with the Committee, (5) inexperience in the practice of law, as demonstrated in part by Roman's reliance on the AILA sample retainer, and (6) remorse.

### D. Deficient Briefing

The Committee has reviewed all of the briefs cited in the referral order, and finds that Roman filed defective briefs in at least three cases in 2006 and 2007.

In *Kaur v. BIA*, 03-4699-ag, Roman's brief failed to address the central issues identified by the Immigration Judge below and included a claim under the Convention Against Torture ("CAT") that was not raised before the IJ and therefore had not been exhausted. In his Response, Roman apologized with regard to inclusion of the CAT claim, stating "I sincerely apologize to the Court for having included [the CAT claim] and would like to point out that this was a one time isolated incident and human error. . . . It was an oversight for which I am sorry for [sic] and assure that it will never happen again." Response, at 27.

In *Kaur v. BIA*, No. 06-1491-ag, Roman recycled boilerplate from other briefs, erroneously referred to the female petitioner using male pronouns, referred to persecution by the "Punjab police" though the petitioner was not from Punjab, and used the term "BIA" to refer to the Court. According to Roman, these mistakes were caused by haste and human error, and did not prejudice the petitioner, whose case was remanded in part to the BIA for further proceedings. Response, at 35-36.

In *Mehmi v. Gonzales*, No. 06-3471-ag, Roman failed to address the extensive and detailed concerns raised in the IJ decision that was subsequently adopted and supplemented by the BIA. According to Roman, his failure to do so was caused by the fact that he relied upon an incorrect statement by the BIA, and he cannot be faulted for basing his brief upon the BIA's mistake. Response, at 31-32. Roman's response does not acknowledge that he was responsible for addressing both the BIA *and* the IJ opinions in his brief. *See Mehmi*, No. 06-3471-ag (2d Cir. Aug. 16, 2007) ("[T]his Court reviews the decision of the IJ as supplemented by the BIA."). Based upon the Court's decision, it appears that Roman's client may have been significantly prejudiced by this omission. *Id.* ("As an initial matter, the Government correctly notes that

11

Petitioner never challenged the IJ's discretionary denial of asylum before the BIA. Nor has Petitioner raised this issue in his brief to this Court. Therefore, we deem any challenge to such denial abandoned.").

At the hearing, Roman stated that he had not personally prepared the briefs cited in Referral Order I. Tr. 61:23-62:9. In fact, these briefs were drafted either by Mr. Singh or his assistant. Tr. 64:2-64:5. Roman said that he had reviewed such briefs in order to submit his response to the Committee, and concluded that "some of the language was subpar" in the briefs that Roman had not prepared or reviewed prior to filing with the Court. Tr. 64:6-64:16. Now that Roman personally handles all of the Second Circuit cases for which he is counsel of record, he reviews and marks up each and every brief before it is filed. Tr. 62:17-62:22. He also instructs the associate who drafts the briefs as to case strategy, format, and appropriate issues to be addressed at the appellate review stage. Tr. 62:22-63:22. Roman believes that, under the new system, the briefs filed before the Court have been of a far superior quality to those cited in the referral order. *Id.* The Committee has reviewed a sampling of the briefs filed by Roman in 2008 and finds that Roman's latest briefs demonstrate significant improvement upon the defective briefs described *supra*, and do not exhibit any of the briefing errors cited in the Court's referral order. Nevertheless, Roman is responsible for his failure to properly supervise the work of the attorneys in his office with regard to the preparation and filing of the deficient briefs. DR 1-104(B) & (C).

The aggravating factors concerning Roman's submission of deficient briefs include: (1) Roman's prior disciplinary sanctions before the Ninth Circuit on the basis of deficient briefing, (2) Roman's filing of deficient briefs on multiple occasions, and (3) the vulnerability of Roman's immigrant clients. ABA Standards § 9.22(a), (d) & (h). The mitigating factors present are (1) absence of a dishonest or selfish motive, (2) a cooperative attitude towards these proceedings, and (3) Roman's remorse. ABA Standards § 9.32(b), (e) & (l).

VII. Recommendation

A. **Reciprocal Discipline**

As a result of Roman's suspension by the Ninth Circuit, he is subject to reciprocal discipline in this Court under Local Rule 46(f), which provides that:

> **Suspension or Disbarment.** Suspension or disbarment shall be governed by Rule 46, Federal Rules of Appellate Procedure.[7]

---

[7] Federal Rule of Appellate Procedure 46(b) provides as follows:

(b) Suspension or Disbarment.

(1) Standard.

1. In all cases in which an order disbarring an attorney or suspending the attorney from practice (whether or not on consent) has been entered in any other court of record, federal or state, and a certified copy thereof has been filed in this court, the clerk shall enter an order for the court, to become effective twenty-four days after the date of service upon the attorney unless sooner modified or stayed, disbarring the attorney or suspending the attorney from practice in this court upon terms and conditions comparable to those set forth by the other court of record. . . .

The rule also provides the attorney with an opportunity to move for modification or revocation of the Court's order. *See* Local Rule 46(f)(2).

In evaluating whether to impose reciprocal discipline, the Second Circuit has relied upon the Supreme Court's decision in *Selling v. Radford*, 243 U.S. 46, 50-51 (1917), which addressed the circumstances under which the Supreme Court should disbar an attorney who had been disbarred from the highest court in Michigan. Following *Selling*, the Second Circuit has held that reciprocal discipline should not be imposed under three circumstances: "(1) absence of due process in the state procedure, (2) substantial infirmity in the proof of lack of private and professional character, or (3) 'some other grave reason' sufficient to indicate that reciprocal [discipline] was inconsistent with 'principles of right and justice.'"[8] *In re Drew v. Tidwell*, 295 F.3d 331, 333-34 (2d Cir. 2002) (quoting *Selling*, 243 U.S. at 50-51); *see also In re Edelstein*, 214 F.3d 127, 131 (2d Cir. 2000) (same).

Roman does not claim – and there is no indication – that the Ninth Circuit disciplinary proceedings lacked due process or that the conclusions reached by the Ninth Circuit were not supported by adequate proof. In asserting that similar discipline should not be imposed by this Court, Roman argues that (1) there were mitigating factors acknowledged by the Ninth Circuit; (2) the New York Appellate Division reviewed the Ninth Circuit order and imposed only public

---

A member of the court's bar is subject to suspension or disbarment by the court if the member: (A) has been suspended or disbarred from practice in any other court; or (B) is guilty of conduct unbecoming a member of the court's bar.

(2) Procedure.

The member must be given an opportunity to show good cause, within the time prescribed by the court, why the member should not be suspended or disbarred.

[8] While *Selling* and its progeny refer to the imposition of reciprocal discipline where sanctions have been imposed by state courts, given that Local Rule 46(f) does not distinguish between state and federal courts, there is no reason to believe that a different test should be applied to reciprocal discipline with regard to sanctions imposed by the Ninth Circuit.

13

censure, not suspension, as reciprocal discipline; (3) the case management problems identified by the Ninth Circuit from 2003 through 2006 were remedied by Roman's purchase of case management software and have not continued; and (4) Roman's "main shortcoming in the Ninth Circuit was a failure to supervise attorneys in [his] California office who [he] erroneously and naively assumed were properly handling the Ninth Circuit appeals." Response, at 38-39.

The Committee finds that the factors cited by Roman do not constitute "grave reason" not to impose suspension as a reciprocal sanction, as contemplated in *Selling*. In particular, Roman's argument that his case management problems were fixed by the purchase of relevant software is belied by the fact that Roman either defaulted or filed late motions for extensions of time in at least eight cases in the Second Circuit after he represented to the Ninth Circuit on May 30, 2006 that the case management software had been installed and the firm's case management issues had been addressed. *See In re Hector Roman, Esq.*, No. 05-80100 (9th Cir. May 30, 2006) (Attorney Response to Order Dated May 8, 2006) ("We have taken steps to better institute how are [sic] client's cases are handled, calendared and tracked in both our New York and California offices. In furtherance thereof, we have identified and purchased the best possible software which is made especially for law firms, to wit: AbacusLaw legal software. . . . I am very confident that the steps taken by our law firm have addressed the issues which were raised at the hearing and, in the future, we will be able to avoid the types of mishaps which had previously taken place.").

However, the Committee finds that a suspension of less than six months is warranted, based upon the other three factors cited by Roman, as well as the following mitigating factors: (1) absence of a dishonest or selfish motive; (2) timely good faith effort to make restitution or to rectify consequences of misconduct; (3) a cooperative attitude toward these proceedings; (4) remorse; and, in particular (5) the remoteness of Roman's prior offenses before the Ninth Circuit. ABA Standards § 9.32(b), (d), (e), (l) & (m).

Accordingly, the Committee finds that reciprocal discipline of Roman, in the form of a three-month suspension, is warranted under Local Rule 46(f).

## B. Discipline for Roman's Conduct Before the Second Circuit

Roman's conduct before the Second Circuit clearly warrants discipline. The record shows that Roman (1) failed to file timely briefs, (2) allowed his partner to submit misleading boilerplate motions under Roman's name, and (3) filed deficient briefs, some of which were submitted without Roman's review. Roman repeatedly failed to withdraw formally from or stipulate to the dismissal of cases which he had abandoned, ultimately burdening the Court with additional work and violating the Court's scheduling orders. In addition, Roman was previously sanctioned by the Ninth Circuit for similar conduct, and was the subject of reciprocal discipline on that basis from a number of other courts around the country, including the New York Appellate Division. Since several of the instances of Roman's misconduct before the Second Circuit post-date the Ninth Circuit's November 29, 2005 order to show cause concerning similar

14

conduct by Roman before that court, Roman was already on notice that such conduct "was unbecoming a member of the bar."

Roman has presented mitigating circumstances for the Committee to consider in determining what sanctions are appropriate. With regard to all of the allegations set forth in the Court's referral orders, Roman has expressed significant remorse for his actions. *See* ABA Standards § 9.32(l). According to Roman, suspension or disbarment by the Court would have a devastating effect upon his career and his practice, which is New York-based. However, given the gravity of Roman's misconduct with regard to neglect of client matters and misrepresentations to the Court, the Committee finds that a three-month suspension on the basis of his conduct before the Second Circuit is warranted.

## C.    Conclusion

The Committee recommends a three-month suspension of Roman from practice before the Court. This sanction should be imposed on the basis of both (1) reciprocal discipline for Roman's suspension from the Ninth Circuit and (2) Roman's conduct before the Second Circuit, each of which shall operate as independent grounds for Roman's suspension. The suspension should commence immediately upon issuance of an order by the Court adopting this Report and Recommendation.

In addition, Roman should be required, within 14 days after the Court's order, to serve the order on his clients in all pending cases, to inform the clients that they must obtain new counsel, and to turn over all client files and materials to the clients. Within 30 days, Roman should be required to file proof with the Court that he has completed the above requirements.

The Court's order and this Report and Recommendation regarding Roman should be served on the state bars of California, New York and New Jersey; the Courts of Appeals for the Third and Ninth Circuits; the Federal District Courts for the Eastern District of New York, Southern District of New York, Western District of New York, Northern District of California and District of New Jersey; the New York Supreme Court, Appellate Division; the Department of Homeland Security; the BIA; and the EOIR.

15